# EXHIBIT "A"

El Paso County - 243rd District Court

Case 3:17-cv-00128-DB    Document 1-1    Filed 04/26/17    Page 2 of 85

Filed 3/28/2017 1:10:45 PM
Norma Favela Barceleau
District Clerk
El Paso County
2017DCV0689

CAUSE NO. _____

| | | |
|---|---|---|
| **MANUEL J. CORRAL AND** | § | **IN THE DISTRICT COURT** |
| **LORENA CORRAL** | § | |
| | § | |
| *Plaintiffs,* | § | _____JUDICIAL DISTRICT |
| | § | |
| **vs.** | § | |
| **LIBERTY MUTUAL INSAURANCE** | § | |
| **COMPANY AND** | § | |
| **KEVIN BROWN** | § | **EL PASO COUNTY, TEXAS** |
| | | |
| *Defendants.* | | |


## PLAINTIFFS' ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Manuel J. Corral and Lorena Corral hereinafter referred to as "Plaintiffs," complaining of Liberty Mutual Insurance Company  and Kevin Brown hereinafter collectively referred to as "Defendants" and hereby respectfully shows unto the Court and Jury as follows:

### I. DISCOVERY CONTROL PLAN

Plaintiffs intend for discovery to be conducted under Level III of Rule 190 of the Texas Rules of Civil Procedure.  This case involves complex issues and will require extensive discovery. Therefore, Plaintiffs asks the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

### II.  RULE 47 STATEMENT

Plaintiffs seek monetary relief over $100,000.00 but not more than $200,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees.

### III. PARTIES

Plaintiff, Manuel J. Corral is an individual and resident of El Paso County, Texas.

Plaintiff, Lorena Corral is an individual and resident of El Paso County, Texas.

Defendant Liberty Mutual Insurance company (hereinafter individually referred to as "Liberty Mutual ") is an insurance company, which on information and belief, is eligible to conduct the business of insurance in Texas.  It can be served with citation by serving Corporation Service Company, by certified mail, return receipt requested at: 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

**Service of process is requested by private process as authorized by this Court.**

Defendant Kevin Brown (hereinafter individually referred to as "Brown") is an insurance adjuster licensed in the State of Texas, which on information and belief, is eligible to conduct the business of insurance in Texas. Defendant Brown can be served with citation by personal service at: 4541 Bellaire Dr. South, Fort Worth, Texas 76109.

**Service of process is requested by private process as authorized by this Court.**

## IV. JURISDICTION AND VENUE

This Court has Jurisdiction over this case in that the amount in controversy exceeds the minimum jurisdictional limits of this Court.

Venue is mandatory and proper in El Paso County, Texas, because all or a substantial part of the events giving rise to the lawsuit occurred in El Paso County, Texas (*see* Tex. Civ. Prac. & Rem. Code §15.002) and the insured property that is the basis of this lawsuit is located in El Paso County, Texas. *See* Tex. Ins. Code §2210.552 and Tex. Civ. Prac. & Rem. Code §15.032 (see below). Venue is proper and mandatory in El Paso County, Texas against all the Defendants in this case because venue is mandatory and/or proper against at least one Defendant and all claims or actions in this case arise out of the same transaction, occurrence, or series of transaction or occurrences.  *See* Tex. Civ. Prac. & Rem. Code §15.005.

## V.  CONDITIONS PRECEDENT

All conditions precedent to recovery have been performed, waived, or have occurred.

## VI. FACTS

A.     Plaintiffs are the holders of Policy Number: H3729830850540 and maintained by Defendant Liberty Mutual  (hereinafter referred to as the "Policy Number").

B.     Plaintiffs are owners of the property which is specifically located at: 6364 Calle Del Rio, El Paso, El Paso County, Texas 79912 (hereinafter referred to as the "Property").

C.     Defendant Liberty Mutual or their agents/representatives sold a policy to Plaintiffs insuring the Property (hereinafter referred to as the "Policy").  Defendant Liberty Mutual represented to the Plaintiffs that the Policy was sufficient to cover any possible damages to the Property and Plaintiffs relied on those representations. Policy is attached and incorporated as "Exhibit A."

D.     Defendant Liberty Mutual represented that the Plaintiffs had adequate personal property and dwelling coverage for the benefit of the Plaintiffs' Property.

E.     On or about 07/10/2015 a wind and hailstorm caused significant damage to the exterior and also the interior of the Property as well of which Plaintiffs reported a loss to Defendant Liberty Mutual.

F.     Plaintiffs submitted a claim against the Policy for damage sustained to the Property as a result of the wind and hailstorm and Defendants assigned claim number: 032325120-01 (hereinafter referred to as the "Claim"). Plaintiffs requested that Defendant Liberty Mutual cover the cost of repairs to the Property, replace or repaired damaged covered personal property, and if warranted, allocated loss of use payment pursuant to the Policy and any other available coverage under the Policy.

G.     Prior to Plaintiffs purchasing the Policy, the Defendant Liberty Mutual represented to Plaintiffs that damages like what the Property sustained by the wind and hailstorm would be covered by the Policy if such damage occurred.  Defendant Liberty Mutual further represented that it was a quality insurance company, a reputable insurance company, with few complaints, and that Defendant Liberty Mutual would pay Plaintiffs fairly for damage to the Property in the event of

a claim, that Defendants collectively would treat Plaintiffs fairly, and that Plaintiffs' Policy provided coverage for the Property. Moreover, Defendants collectively represented that they would not conduct an outcome-oriented investigation of Plaintiffs' claim, and that overall Plaintiffs would be adequately and fairly compensated if Plaintiffs' Property sustained damage from a wind and hailstorm and Plaintiffs made a claim under the Policy. These and other representations by Defendant Liberty Mutual were false and were either negligently made to Plaintiffs, recklessly made without any knowledge of their truth or their falsity, or they were made knowingly and intentionally regarding their falsity. These misrepresentations were made to induce Plaintiffs to purchase the Policy from Defendant Liberty Mutual, and Plaintiffs did, in fact, rely on these misrepresentations in deciding to purchase the Policy from Defendant Liberty Mutual .

H.     Without limitation, Defendant Brown's narrow assessment negligently misrepresented the intentions to evaluate all the damages that had occurred by simply ignoring the damage to the entire Property with an outcome oriented analysis of minimal areas of the dwelling damages alone. Defendant Brown failed to account for the cost of repair, replacement, and/or removal of the damaged Property as a result of the wind and hailstorm to return the property to pre-loss condition. Defendants have also failed to account for the Plaintiffs' out-of-pocket cost to mitigate the loss as well as the amount of insurance coverage for Plaintiffs' claim/loss under Plaintiffs' Policy.

I.     Defendants failed to properly adjust the claims and have denied at least a portion of the claim with an inadequate investigation by solely relying on Defendant Brown's narrowly tailored and grossly misrepresented inspection, even though the Policy provides coverage for losses such as those suffered by Plaintiffs. On July 1, 2016, Defendant Liberty Mutual acknowledged an error with Defendant Brown's original estimate and tendered additional amounts towards resolution

of the claim; however, Defendant failed to account for the time that had lapsed from the October 17, 2014 estimate through the date the error was identified.

J.    Furthermore, these false representations made by Defendant Brown in the misrepresented damage assessment, that was intentionally incorporated by the Defendant Liberty Mutual to minimize payment on the claim, have and continue to allow Defendants to financially gain by wrongfully denying at least a portion of Plaintiffs' Claim.

K.    Plaintiffs' Claim still remains unpaid and they still have not been able to properly repair the Property due to the outcome-oriented investigation, misrepresentations, and failures of Defendants to properly adjust the damage and promptly submit full payment per the Policy.

L.    Defendants have failed to perform its contractual duty to adequately compensate Plaintiffs under the terms of the Policy. Specifically, Defendant Liberty Mutual failed and refused to pay on the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property due to the wind and hailstorm. All conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiffs.  Defendant Liberty Mutual's conduct constitutes a breach of contract between the Defendant Liberty Mutual  and Plaintiffs.

M.    Defendant Brown's outcome-oriented investigation was a misrepresentation to Plaintiffs by failing to account for the total damages inflicted upon Plaintiffs' Property due to the wind and hailstorm. Defendant Liberty Mutual accepted the misrepresentations from Defendant Brown, adopted and incorporated them into the denial of at least a portion of Plaintiffs' claim by indicating the loss was not covered.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Misrepresentation Regarding Policy or Insurer.  TEX. INS. CODE Section 541.060 (a)(1).

N.    Defendant Liberty Mutual failed to make an attempt to settle Plaintiffs' claim in a fair manner, even though they were aware of their liability to Plaintiffs under the Policy.  Defendant Liberty

Mutual's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE Section 541.060(a)(2)(A).

O.    Defendant Liberty Mutual failed to perform its contractual duty to adequately compensate Plaintiffs under the terms of the Policy. Specifically, Defendant Liberty Mutual failed and refused to pay on the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiffs.  Defendant Liberty Mutual's conduct constitutes a breach of contract between the Defendants and Plaintiffs.

P.    Defendants and/or its representative, including Defendant Brown misrepresentations to Plaintiffs that they performed a thorough investigation; however, in reality Defendants refused to assess the total damages inflicted upon Plaintiffs' Property due to the wind and hailstorm. Defendants' conduct constitutes a violation of the Texas Insurance Code, Misrepresentation Regarding Policy or Insurer.  TEX. INS. CODE Section 541.060 (a)(1).

Q.    Defendants failed to make an attempt to settle Plaintiffs' claim in a fair manner, even though they were aware of their liability to Plaintiffs under the Policy.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE Section 541.060(a)(2)(A).

R.    Defendant Liberty Mutual failed to explain to Plaintiffs the reasons for their offer of an inadequate settlement.   Specifically, Defendant Liberty Mutual failed to offer Plaintiffs adequate compensation, without further investigating the damages cause to the dwelling and entire Property due to the wind and hailstorm. Furthermore, Defendant Liberty Mutual did not communicate that any possible future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiffs' Claim.  Defendant Liberty Mutual 's conduct constitutes a violation

of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE Section 541.060 (a)(3).

S.      Defendant Liberty Mutual failed to affirm or deny coverage of Plaintiffs' Claim within a reasonable time.  Specifically, Plaintiffs did not receive timely indication of acceptance or rejection, regarding the full and entire Claim, in writing from Defendant Liberty Mutual despite the evidence presented depicting the wind and hailstorm. Defendant Liberty Mutual's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE Section 541.060(a)(4).

T.      Defendants refused to compensate Plaintiffs, under the terms of the Policy, because Defendants failed to conduct a reasonable investigation of the wind and hailstorm property. Specifically, Defendant Brown performed a substandard, outcome-oriented investigation of Plaintiffs' damage by failing to fairly and adequately inspect the entire Property; Furthermore, Defendant Liberty Mutual  accepted Defendant Brown's  misrepresentations of the Property damage and incorporated them into the denial of at least a portion of Plaintiffs' Claim. This negligently conducted inspection resulted in Defendant Liberty Mutual's biased, unfair, and inequitable evaluation of Plaintiffs' loses to the Property as covered by the Policy. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE Section 541.060 (a)(7).

U.      Defendant Liberty Mutual failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiffs' Claim, beginning an investigation of Plaintiffs' claim and requesting all information reasonably necessary to investigate Plaintiffs' Claim within the statutorily mandated deadline.  Defendant Liberty Mutual's conduct constitutes violation of the Texas Insurance Code, Prompt Payment of Claims, TEX. INS. CODE Section 542.055.

V.    Defendants failed to accept or deny Plaintiffs' full and entire Claim within the statutory mandated deadline of receiving all necessary information.  Defendants' conduct constitutes violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE Section 542.056.

W.    Defendants Liberty Mutual failed to meet its obligations under the Texas Insurance Code regarding payment of Plaintiffs' Claim without delay.  Specifically, Defendants have delayed full payment of Plaintiffs' Claim longer than allowed and, to date; Plaintiffs have not yet received full payment for their claim.  Defendants' conduct constitutes violation of the Texas Insurance Code, Prompt Payment of Claims, TEX. INS. CODE Section 542.058.

X.    From and after the time Plaintiffs' Claim was presented to Defendants, the liability of Defendants to pay the full claim in accordance with the terms of the Policy was reasonably clear.  However, Defendants Liberty Mutual  have refused to pay Plaintiffs in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment.  Defendants' conduct constitutes a breach of the common law duty of good faith and fair dealing.

Y.    As a result of all of Defendants' wrongful acts, misrepresentations, and omissions as set forth herein, Plaintiffs were forced to retain the professional services of the attorney and law firm who is representing Plaintiffs with respect to these causes of action.

Z.    Plaintiffs' experience is not an isolated case.  The wrongful acts, misrepresentations, and omissions committed by Defendants in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendants with regard to handling these types of claims.  Defendants' entire process is unfairly biased and designed to reach favorable outcomes for the company at the expense of the policyholder.

## VII. THEORIES OF LIABILITY

### A. Cause of Action for Breach of Contract

According to the Insurance Policy that Plaintiffs purchased, Defendants have the duty to investigate and pay Plaintiffs' policy benefits for claims made for covered damages, including additional benefits under the Policy, resulting from wind and hailstorm.  As a result of the cause of damage, which is a covered peril under the Policy, Plaintiffs' Property has been damaged.

Defendants' failure and refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Defendants' contract with Plaintiffs.  As a result of this breach of contract, Plaintiffs' have suffered the damages that are described in this petition.

### B. Cause of Action for Violation of Section 542

Plaintiffs re-allege and incorporate by reference all previous and subsequent paragraphs herein.

Defendants' acts, omissions, failures and conduct that are described in this petition violate Section 542 of the Texas Insurance Code, including without limitation the misrepresentations made by any of the Defendants as set forth above which were made to and which did, in fact, induce Plaintiffs into purchasing the Policy from Defendants.

Within the timeframe required after the receipt of either actual or written notice of Plaintiffs' Claim, Defendants did not request from Plaintiffs any items and forms that it reasonably believed at that time would be required for adequately processing Plaintiffs' Claim.  As a result, Defendants have violated Section 542 by failing to accept or reject Plaintiffs' Claim in writing within the statutory timeframe.  Defendants also violated Section 542 by failing to pay Plaintiffs' Claim within the applicable statutory period.  In addition, in the event it is determined Defendants owe Plaintiffs

any additional monies on Plaintiffs' Claim, Defendants have automatically violated Section 542 in this case.

**C. DTPA Cause of Action**

Plaintiffs re-allege and incorporate by reference all previous and subsequent paragraphs herein.

Plaintiffs incorporates all the allegations in this petition for this cause of action against Defendants under the provisions of the DTPA, including without limitation the misrepresentations made by the Defendants as set forth above which were made to and which did, in fact, induce Plaintiffs into purchasing the Policy from Defendants. Plaintiffs are consumers or intended beneficiaries of goods and services provided by Defendants pursuant to the DTPA. Plaintiffs have met all conditions precedent to bringing this cause of action against Defendants.

By its acts, omissions, failures, and conduct that are described in this petition, The Defendants have violated Sections 17.46 (b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA. In this respect, Defendants' violations include, without limitation, (1) its unreasonable delays in the investigation, adjustment and resolution of Plaintiffs' claim, (2) its failure to give Plaintiffs the benefit of the doubt, and (3) its failure to pay for the proper repair of Plaintiffs' home on which liability had become reasonably clear, which gives Plaintiffs the right to recover under Section 17.46 (b)(2).

As described in this petition, Defendants represented to Plaintiffs that its insurance policy, adjusting, and investigative services such as Defendant Brown's had characteristics or benefits that it did not have, which gives Plaintiffs the right to recover under Section 17.46 (b)(5) of the DTPA;

As described in this petition, Defendants represented to Plaintiffs that its insurance policy adjusting and investigative services, and specifically Defendant Brown's adjusting and investigative services were of a particular standard, quality, or grade when they were of another in violation of Section 17.46 (b)(7) of the DTPA;

As described in this petition, Defendants advertised its insurance policy, adjusting and investigative services such as Defendant Brown's estimate of damage would be fair and unbiased and of a particular standard, with actual intent to not sell to Plaintiff them as advertised in violation of Section 17.46 (b)(9) of the DTPA;

As described in this petition, Defendants represented to Plaintiffs that its insurance policy and Defendant Brown's adjusting and investigative services conferred or involved rights, remedies, or obligations that it did not have, which gives Plaintiffs the right to recover under Section 17.46 (b)(12) of the DTPA;

As described in this petition, Defendants failed to disclose information concerning goods or services which were known at the time of the transaction and such failure to disclose information such as Defendants biased investigatory claims practices, was intended to induce Plaintiffs into a transaction into which the Plaintiffs would not have entered had the information been disclosed, which gives Plaintiffs the right to recover under Section 17.46 (b)(24) of the DTPA;

Defendants have breached an express warranty that the damage caused by wind and hailstorm would be covered under the insurance policies.  This breach entitles Plaintiffs to recover under Sections 17.46 (b)(12) and (20) and 17.50 (a)(2) of the DTPA;

Defendants' actions, as described in this petition, are unconscionable in that it took advantage of Plaintiffs' lack of knowledge, ability, and experience regarding but not limited to insurance procedures, and assessment of property damage to a grossly unfair degree.  Defendants' unconscionable conduct gives Plaintiffs the right to relief under Section 17.50(a)(3) of the DTPA; and

Defendants' conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

All of the above-described acts, omissions, and failures of Defendants are a producing cause of Plaintiffs' damages that are described in this petition. Furthermore, Plaintiffs were the intended

beneficiaries of Defendant Brown's minimal inspection and misrepresented estimate of damage to the Property, to which Defendant Liberty Mutual incorporated them into the denial of at least a portion of Plaintiffs' claim. All of the above-described acts, omissions, and failures of Defendants were done knowingly and intentionally as those terms are used in the Texas Deceptive Trade Practices Act.

**D. Cause of Action for Unfair Insurance Practices**

Plaintiffs re-allege and incorporate by reference all previous and subsequent paragraphs herein.

Plaintiffs incorporates all the allegations in this petition for this cause of action against Defendants under the Texas Insurance Code, including without limitation the misrepresentations made by any of the Defendants as set forth above which were made to and which did, in fact, induce Plaintiffs into purchasing the Policy from Defendants. Whereas, Plaintiffs have satisfied all conditions precedent to bringing this cause of action. By its acts, omissions, failures, and conduct, Defendants have engaged in unfair and deceptive acts or practices in the business of insurance in violation of 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition plus Defendants' unreasonable delays in the investigation, adjustment, and resolution of Plaintiffs' claim, Defendants' failure to pay for the damage to Plaintiffs' personal property and proper repair of Plaintiffs' real property on which liability had become reasonably clear; engaging in false, misleading and deceptive acts or practices in the business of insurance in this case; and misrepresenting to Plaintiffs pertinent facts or policy provisions relating to the coverage at issue. They further include Defendants' failure to give Plaintiffs the benefit of the doubt. Specifically, Defendants are guilty of the following unfair insurance practices:

      A.    Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

B.      Engaging in unfair claims settlement practices;

C.      Defendant Brown's negligently conducted an outcome oriented inspection of Plaintiffs' Property resulting in misrepresentations of pertinent facts or policy provisions relating to the coverage at issue, and Defendant Liberty Mutual's incorporation of those misrepresentations in refusing to pay at least a portion of the Claim;

D.      Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear;

E.      Failing to affirm or deny coverage of Plaintiffs' Claim within a reasonable time;

F.      Refusing to pay Plaintiffs' Claim without conducting a reasonable investigation with respect to the claim; and

G.      Failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for the denial of a claim or for the offer of a company's settlement.

Defendants have also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing.  Defendants' conduct as described herein has resulted in Plaintiffs' damages that are described in this petition.

All of the above-described acts, omissions, and failures of Defendants were done knowingly as that term is used in the Texas Insurance Code.

**E.  Cause of Action for Breach of Duty of Good Faith and Fair Dealing**

Plaintiffs re-allege and incorporate by reference all previous and subsequent paragraphs herein.

Plaintiffs incorporates all the allegations of the preceding paragraphs for this cause of action, including without limitation the misrepresentations made by any of the Defendants as set forth above which were made to and which did, in fact, induce Plaintiffs into purchasing the Policy from Defendants.  By its acts, omissions, failures and conduct, Defendants have breached its common law duty of good faith and fair dealing by failing to pay the proper amounts on Plaintiffs' entire Claim without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for this denial.  Defendants have also breached this duty by unreasonably delaying payment of Plaintiffs' entire Claim and by failing to settle Plaintiffs'

Claim because Defendants knew or should have known that it was reasonably clear that the Claim was covered. These acts, omissions, failures, and conduct of Defendants are a proximate cause of Plaintiffs' damages.

**F.       Misrepresentation**

Plaintiffs re-allege and incorporate by reference all previous and subsequent paragraphs herein.

Defendants made misrepresentations as set forth above which were made to and which did, in fact, induce Plaintiffs into purchasing the Policy from Defendants. These misrepresentations were made to induce Plaintiffs to purchase the Policy from Defendants, and Plaintiffs did, in fact, rely on these misrepresentations in deciding to purchase the Policy from Defendants. Furthermore, Plaintiffs was the intended beneficiaries of Defendant Brown's investigative services to which eventually revealed a misrepresentation of the actual damages to the Property, and Defendant Liberty Mutual incorporated those misrepresentations into the denial of at least a portion of Plaintiffs' Claim.

These negligent, reckless, or intentional misrepresentations of Defendants were the proximate cause of damage to the Plaintiffs.

**G.       Fraud**

Plaintiffs re-allege and incorporate by reference all previous and subsequent paragraphs herein.

Plaintiffs incorporate all the allegations of the preceding paragraphs for this cause of action. Defendants by and through its agents and/or representatives made false representations, and/or false promises to Plaintiffs. These false representations and/or false promises made by the Defendant Brown were material misrepresentations or omissions of fact regarding the Property damage and Policy coverage, and Defendant Liberty Mutual incorporated those misrepresentations into the continued denial of at least a portion of Plaintiffs' claim. Defendant Brown's outcome oriented investigation   and biased claims process has now revealed that Defendant Liberty Mutual's

representations, and/or promises were false and were made either intentionally, recklessly, or without regard to their truth, and with the intent to induce Plaintiffs into purchasing the insurance policy at issue, and accepting as true and correct the adjustment of Plaintiffs' Claim. As a result of Defendants' material misrepresentations and omissions to which Plaintiffs detrimentally relied upon, Plaintiffs have suffered damages substantially in excess of the minimum jurisdictional limits of this Court.

The fraudulent acts and/or omissions of the Defendants, as set forth herein, are sufficient, under Chapter 41 of the Texas Civil Practices and Remedies Code, to justify the imposition of punitive damages against Defendants. These reckless and/or intentional misrepresentations of Defendants were the proximate cause of damage to the Plaintiffs.

## VIII.  WAIVER AND ESTOPPEL

Defendants have waived and are estoped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiffs.

## IX.  DAMAGES

The above described acts, omissions, failures and conduct of Defendant has caused Plaintiffs' damages, which include, without limitation, the cost to properly repair Plaintiffs' real property and any investigative and/or engineering fees incurred in the claim. Plaintiffs are also entitled to recover consequential damages from Defendant's breach of contract. Furthermore, Plaintiffs' have suffered independent injuries due mental anguish, and also due to the increase in the costs of labor and materials to properly restore the Property to pre-loss condition from the April 23, 2014 loss through the present date of this pending claim. Plaintiffs are also entitled to recover the amount of Plaintiffs' claim plus an 18% per annum penalty on that claim against Defendant as damages under Section 542 of the Texas Insurance Code, plus prejudgment interest and attorneys' fees. All the damages described in this petition are within the jurisdictional limits of the Court.

## X.  ADDITIONAL DAMAGES

Defendant also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. Because of Defendant's knowing and intentional misconduct, Plaintiffs are entitled to additional damages as authorized by Section 17.50(b)(1) of the DTPA. Plaintiffs are further entitled to the additional damages that are authorized by Section 541 of the Texas Insurance Code.

## XI.  EXEMPLARY DAMAGES

Defendant's breach of its duty of good faith and fair dealing owed to Plaintiffs were done intentionally, with a conscious indifference to the rights, mental health and welfare of Plaintiffs and with "malice" as that term is defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Defendant are the type of conduct which the State of Texas protects its citizen against by the imposition of exemplary damages. Therefore, Plaintiffs seek the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Defendant for their wrongful conduct and to set an example to deter Defendant and others similarly situated from committing similar acts in the future.

## XII.  ATTORNEYS' FEES

As a result of Defendants' conduct that is described in this petition, Plaintiffs have been forced to retain the undersigned attorneys to prosecute this action and have agreed to pay reasonable attorneys' fees. Plaintiffs are entitled to recover these attorneys' fees under Chapter 38 of the Texas Civil Practices and Remedies Code, Sections 541 and 542 of the Texas Insurance Code, and Section 17.50 of the DTPA.

## XIII. JURY DEMAND

Plaintiffs asserts Plaintiffs' right to a trial by jury, under Texas Constitution Article 1, Section 15, and makes this demand for a jury trial at least 30 days before the date this case is set for trial, in accordance with Texas Rule of Civil Procedure 216. Plaintiffs tender the fee of $30.00, as required by Texas Government Code Section 51.604.

## XIV. REQUEST FOR DISCLOSURE

Defendants, within 50 days after service of this Petition, are requested to furnish the information and material described in Texas Rules of Civil Procedure 190.2(6) and 194.2.

## XV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon trial hereof, said Plaintiffs have and will recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, both as to actual damages, consequential damages, treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and all punitive, additional, and exemplary damages as may be found.  In addition, Plaintiffs request the award of attorneys' fees for the trial and any appeal of this case, for all costs of court, for prejudgment and post-judgment interest as allowed by law, and for any other and further relief, at law or in equity, to which he may show himself to be justly entitled.

Respectfully submitted,

**WAYNE WRIGHT, LLP**
5707 Interstate Ten West
San Antonio, Texas 78201
(210) 734-7077 (Telephone)
(210) 734-9965 (Facsimile)

By:  /s/   Brent L. Klender   /s/
**BRENT L. KLENDER**
**bklender@waynewright.com**
**Texas State Bar No. 24095204**

CHRISTOPHER MILLER
cmiller@waynewright.com
Texas State Bar No. 24025536

HAROLD MCCALL
hmccall@waynewright.com
Texas State Bar No. 24054279

DON CROOK
dcrook@waynewright.com
Texas State Bar No. 00783901
**ATTORNEYS FOR PLAINTIFFS**



**Liberty Mutual Insurance**

350 E. 96th Street
Indianapolis, In 46240
Telephone: 317-571-6855

August 24, 2016

Wayne Wright Lawyers
5707 Interstate Ten West
San Antonio, TX 78201

| | |
|---|---|
| Insured Name: | Lorena Corral |
| | Manuel J Corral |
| Policy Number: | H3729830850540 |
| Claim ID: | 032325120 |
| Date of Loss: | 07/10/2015 |
| Policy Effective: | 02/26/2015 |

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the Liberty Mutual Insurance Group Inc. in the usual and customary course of its business.

*Celest Bustard*

Celest Bustard
Policy Copy Support

CB
Enclosures

# Policy Declarations



## A summary of your homeowners insurance coverage

Reason for your new declarations page: Changes made to your policy
Please refer to the Change Detail section on page 2 for more information.
Effective date of this change: 02/26/2015

 **INSURANCE INFORMATION**

| | |
|---|---|
| Named Insured<br>Lorena Corral<br>Manuel J Corral | Policy Number<br>H37-298-308505-40 |
| Mailing Address<br>6364 Calle Del Rio<br>El Paso TX 79912-3436 | Policy Period<br>02/26/2015-02/26/2016 12:01AM<br>standard time at the address of the<br>Named Insured at Insured Location. |
| Insured Location<br>Same as Mailing address above | |

**QUESTIONS ABOUT YOUR POLICY?**

By phone
For service:
1-800-225-7014

Liberty Mutual
PO Box 970
Mishawaka IN 46546

Sales Representative
Veronica Dominguez
1-915-730-6648
1-888-233-6440

To report a claim
By phone
1-800-225-2467

Policy Declarations

| Premium Summary | | |
|---|---|---|
| Standard Policy | $ | 1,395.00 |
| Additional Coverages | $ | 46.00 |
| **Total 12 Month Policy Premium** | **$** | **1,441.00** |

Your discounts and benefits have been applied to your total policy premium. Please refer to the Discounts and Benefits section for more details.

Through your affiliation with Fort Bliss Federal Credit Union your policy includes savings on your home insurance through the TruStage™ Auto and Homeowners Insurance Program.

**THIS IS NOT YOUR HOME INSURANCE BILL.**

## Coverage Information

### Standard Policy

| Section I Coverages | | LIMITS | PREMIUM |
|---|---|---|---|
| A. Dwelling | $ | 775,000 | |
| B. Other Structures on Insured Location | $ | 77,500 | |
| C. Personal Property | $ | 465,000 | |
| D. Loss of Use of Insured Location | $ | 155,000 | |

| Section II Coverages | | | |
|---|---|---|---|
| E. Personal Liability (each occurrence) | $ | 1,000,000 | |
| F. Medical Payments to Others (each person) | $ | 5,000 | |

Policy Deductibles - Section I

Losses covered under Section I are subject to a deductible of 1%: $7,750

| Total Standard Policy | $ | 1,395 |
|---|---|---|



## Coverage Information (continued)

| Additional Coverages | | | |
|---|---|---|---|
| | DEDUCTIBLE | LIMITS | PREMIUM |
| IDENTITY FRAUD EXPENSE $15,000 | | | $    24 |
| CREDIT CARD, FUND TRANSFER CARD, FORGERY $1,000 | | | $     0 |
| Coverage E & F increased limit | | | $    22 |

## Discounts and Benefits

Your discounts and benefits have been applied to your total policy premium.

- Inflation Protection Discount
- Claims Free Discount
- New Roof Discount
- Electronic Funds Transfer Discount
- TruStage™Auto and Homeowners Insurance program
  Fort Bliss Federal Credit Union
- New or Renovated Home Discount
- Early Shopper Discount
- Multi Policy Discount - Auto
- Paperless Policy Discount
- Protective Device Discounts:
  Smoke Alarm/extinguisher/deadbolt

## Change Detail

Policy Assigned From
Changes made to your policy for Policy Change 1.
There is no premium increase for above changes.

## Endorsements — Changes to Your Policy

- LibertyGuard®Deluxe Homeowner Policy (HO 00 03 10 00)
- Credit Card, Fund Transfer Card, Forgery (HO 04 53 10 00)
- Special Provisions (HO 01 42 06 04)
- Inflation Protection (FMHO-2835 11 03)
- Arson Reward (FMHO-993)
- Identity Fraud Expense (FMHO 3159 1008)
- Protective Devices (HO 04 16 10 00)
- Texas Homeowner Amendatory End (FMHO 3510 1013)
- No SecII/Limit I-Day Care (HO 04 96 10 00)

## Important Messages

Flood Insurance: Your Homeowners policy does not provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

LibertyGuard®Deluxe Homeowners Policy Declarations
Coverage provided and underwritten by Liberty Insurance Corporation, Boston MA.

This policy, including endorsements listed above, is countersigned by:

_Dexter R. Legg_
_____
Dexter R. Legg
Secretary

_David H. Long_
_____
David H. Long
President

_Ty Harris_
_____
Ty Harris
Authorized Representative



# LibertyGuard Deluxe Homeowners Policy

Please read your policy and each endorsement carefully.

**To serve you best…**

Liberty Mutual has over 350 service offices throughout the United States and Canada.  Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NON ASSESSABLE**



# LIBERTYGUARD DELUXE HOMEOWNERS POLICY
## HO 00 03 EDITION 10 00

**TABLE OF CONTENTS**

| | Page |
|---|---|
| Agreement | 1 |
| Definitions | 1-2 |
| **SECTION I - PROPERTY COVERAGES** | |
| Coverage A Dwelling | 3 |
| Coverage B Other Structures | 3 |
| Coverage C Personal Property | 3-5 |
| Coverage D Loss of Use | 5 |
| Additional Coverages | 5 |
| Debris Removal | 5 |
| Reasonable Repairs | 5-6 |
| Trees, Shrubs and Other Plants | 6 |
| Fire Department Service Charge | 6 |
| Property Removed | 6 |
| Credit Card, Fund Transfer Card, Forgery and Counterfeit Money | 6-7 |
| Loss Assessment | 7 |
| Collapse | 7 |
| Glass or Safety Glazing Material | 7-8 |
| Landlord's Furnishings | 8 |
| Ordinance or Law | 8 |
| Grave Markers | 8 |
| **SECTION I - PERILS INSURED AGAINST** | |
| Coverage A Dwelling and Coverage B Other Structures | 8-10 |
| Coverage C Personal Property | 10-11 |
| **SECTION I - EXCLUSIONS** | |
| Ordinance or Law | 11 |
| Earth Movement | 11-12 |
| Water Damage | 12 |
| Power Failure | 12 |
| Neglect | 12 |
| War | 12 |
| Nuclear Hazard | 12 |
| Intentional Loss | 12 |
| Governmental Action | 12 |
| Weather Conditions | 12 |
| Acts or Decisions | 12 |
| Faulty, Inadequate or Defective | 12 |
| **SECTION I - CONDITIONS** | |
| Insurable Interest and Limit of Liability | 13 |
| Your Duties After Loss | 13 |
| Loss Settlement | 13-14 |
| Loss to a Pair or Set | 14 |
| Appraisal | 14 |
| Other Insurance | 14 |
| Suit Against Us | 14-15 |
| Our Option | 15 |

| | Page |
|---|---|
| Loss Payment | 15 |
| Abandonment of Property | 15 |
| Mortgage Clause | 15 |
| No Benefit To Bailee | 15 |
| Nuclear Hazard Clause | 15 |
| Recovered Property | 15 |
| Volcanic Eruption Period | 15 |
| Policy Period | 15 |
| Concealment or Fraud | 15-16 |
| Loss Payable Clause | 16 |
| **SECTION II - LIABILITY COVERAGES** | |
| Coverage E Personal Liability | 16 |
| Coverage F Medical Payments to Others | 16 |
| **SECTION II - EXCLUSIONS** | |
| Motor Vehicle Liability | 16-17 |
| Watercraft Liability | 17 |
| Aircraft Liability | 17 |
| Hovercraft Liability | 17 |
| Coverage E Personal Liability and Coverage F Medical Payments to Others | 17-18 |
| Coverage E Personal Liability | 18-19 |
| Coverage F Medical Payments to Others | 19 |
| **SECTION II - ADDITIONAL COVERAGES** | |
| Claim Expenses | 19 |
| First Aid Expenses | 19 |
| Damage to Property of Others | 19-20 |
| Loss Assessment | 20 |
| **SECTION II - CONDITIONS** | |
| Limit of Liability | 20 |
| Severability of Insurance | 20 |
| Duties After Loss | 20-21 |
| Duties of an Injured Person | 21 |
| Payment of Claim | 21 |
| Suit Against Us | 21 |
| Bankruptcy of an Insured | 21 |
| Other Insurance | 21 |
| Policy Period | 21 |
| Concealment or Fraud | 21 |
| **SECTIONS I AND II - CONDITIONS** | |
| Liberalization Clause | 21 |
| Waiver or Change of Policy Provisions | 21 |
| Cancellation | 21-22 |
| Non-Renewal | 22 |
| Assignment | 22 |
| Subrogation | 22 |
| Death | 22 |
| *MUTUAL POLICY CONDITIONS | 23 |

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



# HOMEOWNERS 3 - SPECIAL FORM

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

**a.** Liability for "bodily injury" or "property damage" arising out of the:

**(1)** Ownership of such vehicle or craft by an "insured";

**(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

**(3)** Entrustment of such vehicle or craft by an "insured" to any person;

**(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

**(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

**b.** For the purpose of this definition:

**(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

**(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

**(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.** Any other activity engaged in for money or other compensation, except the following:

**(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

**(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

**a.** You and residents of your household who are:

**(1)** Your relatives; or

**(2)** Other persons under the age of 21 and in the care of any person named above;

**b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

**(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a person described in **a.(1)** above; or



**c.** Under Section **II:**

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

**a.** The one family dwelling where you reside;

**b.** The two, three or four family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.



## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section **I** that exceeds the deductible amount shown in the Declarations.

## SECTION I - PROPERTY COVERAGES

### A. Coverage A - Dwelling

1. We cover:

    **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

    **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B - Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

    **a.** Land, including land on which the other structures are located;

    **b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

    **c.** Other structures from which any "business" is conducted; or

    **d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A**. Use of this coverage does not reduce the Coverage **A** limit of liability.

### C. Coverage C - Personal Property

1. **Covered Property**

    We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

    **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

    **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Residences**

    Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

    **a.** Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

    **b.** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits Of Liability**

    The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

    **a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

    **b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

    This limit includes the cost to research, replace or restore the information from the lost or damaged material.



**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

**j.** $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.
Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **j.**

**k.** $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.
Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k.**

**4. Property Not Covered**

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

**(1)** This includes:

**(a)** Their accessories, equipment and parts; or

**(b)** Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

**(2)** We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

**(a)** Used solely to service an "insured's" residence; or

**(b)** Designed to assist the handicapped;

**d.** Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

**g.** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section I - Property Coverages;

**h.** Property rented or held for rental to others off the "residence premises";

**i.** "Business" data, including such data stored in:

**(1)** Books of account, drawings or other paper records; or

**(2)** Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;



j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** - Property Coverages; or

k. Water or steam.

## D. Coverage D - Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C**;

provided the tree(s):

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

### 2. Reasonable Repairs

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.



**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

   **(1)** Increase the limit of liability that applies to the covered property; or

   **(2)** Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section **I** - Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

   **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

   **(1)** Use of a credit card, electronic fund transfer card or access device:

     **(a)** By a resident of your household;

     **(b)** By a person who has been entrusted with either type of card or access device; or

     **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

   **(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

   **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

   **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

**Liberty Mutual®**
**INSURANCE**

**(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **P.** Policy Period under Section **I** - Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** With respect to this Additional Coverage:

**(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

**(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

**(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

**(1)** The Perils Insured Against named under Coverage **C**;

**(2)** Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**c.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**d.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

**a.** We cover:

**(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

**(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.



**b.** This coverage does not include loss:

  **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

  **(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C,** other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

  **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

  **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

  **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

  **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

  **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I - PERILS INSURED AGAINST**

**A. Coverage A - Dwelling And Coverage B - Other Structures**

**1.** We insure against risk of direct physical loss to property described in Coverages **A** and **B.**

**2.** We do not insure, however, for loss:

**a.** Excluded under Section **I** - Exclusions;

**b.** Involving collapse, except as provided in **E.8.** Collapse under Section **I** - Property Coverages; or

**c.** Caused by:

  **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if

you have used reasonable care to:

(a) Maintain heat in the building; or

(b) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(a) Fence, pavement, patio or swimming pool;

(b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

(c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

(d) Pier, wharf or dock;

(3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

(5) Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

(a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

(b) A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

(6) Any of the following:

(a) Wear and tear, marring, deterioration;

(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

(c) Smog, rust or other corrosion, or dry rot;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(g) Birds, vermin, rodents, or insects; or

(h) Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

(i) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or



**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section **I** - Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C - Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** - Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

**a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

**(1)** Committed by an "insured";

**(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

**(4)** That occurs off the "residence premises" of:

**(a)** Trailers, semitrailers and campers;

**(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

**(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.



**12. Accidental Discharge Or Overflow Of Water Or Steam**

   **a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

   **b.** This peril does not include loss:

      **(1)** To the system or appliance from which the water or steam escaped;

      **(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

      **(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

      **(4)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

   **c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

   **d.** Section I - Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing**

   **a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

      **(1)** Maintain heat in the building; or

      **(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   **b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

**SECTION I - EXCLUSIONS**

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

  **1. Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

   **a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section I - Property Coverages;

   **b.** The requirements of which result in a loss in value to property; or

   **c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

  **2. Earth Movement**

Earth Movement means:

   **a.** Earthquake, including land shock



waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues    and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

**3. Water Damage**

Water Damage means:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

**c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **M.** Nuclear Hazard Clause under Section **I** - Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".



## SECTION I - CONDITIONS

### A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or
2. For more than the applicable limit of liability.

### B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;
2. Notify the police in case of loss by theft;
3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I - Property Coverages;
4. Protect the property from further damage. If repairs to the property are required, you must:
   a. Make reasonable and necessary repairs to protect the property; and
   b. Keep an accurate record of repair expenses;
5. Cooperate with us in the investigation of a claim;
6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
7. As often as we reasonably require:
   a. Show the damaged property;
   b. Provide us with records and documents we request and permit us to make copies; and
   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;
8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
   a. The time and cause of loss;
   b. The interests of all "insureds" and all others in the property involved and all liens on the property;
   c. Other insurance which may cover the loss;

d. Changes in title or occupancy of the property during the term of the policy;
e. Specifications of damaged buildings and detailed repair estimates;
f. The inventory of damaged personal property described in **6.** above;
g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and
h. Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I - Property Coverages, stating the amount and cause of loss.

### C. Loss Settlement

In this Condition **C.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section I - Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:
   a. Personal property;
   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;
   c. Structures that are not buildings; and
   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:
   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:
      (1) The limit of liability under this policy that applies to the building;
      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or
      (3) The necessary amount actually spent to repair or replace the



damaged building.

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C. Loss Settlement**, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of



the terms under Section **I** of this policy and the action is started within two years after the date of loss.

**H. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**1.** Reach an agreement with you;

**2.** There is an entry of a final judgment; or

**3.** There is a filing of an appraisal award with us.

**J. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**K. Mortgage Clause**

**1.** If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**2.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

**a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

**c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section **I** - Conditions also apply to the mortgagee.

**3.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

**4.** If we pay the mortgagee for any loss and deny payment to you:

**a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

**b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**5.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**L. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**M. Nuclear Hazard Clause**

**1.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**2.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

**3.** This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**N. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**O. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

**P. Policy Period**

This policy applies only to loss which occurs during the policy period.

**Q. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;



**2.** Engaged in fraudulent conduct; or
**3.** Made false statements;
relating to this insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

**SECTION II - LIABILITY COVERAGES**

**A. Coverage E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

**1.** To a person on the "insured location" with the permission of an "insured"; or

**2.** To a person off the "insured location", if the "bodily injury":

**a.** Arises out of a condition on the "insured location" or the ways immediately adjoining;

**b.** Is caused by the activities of an "insured";

**c.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

**d.** Is caused by an animal owned by or in the care of an "insured".

**SECTION II - EXCLUSIONS**

**A. "Motor Vehicle Liability"**

**1.** Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

**a.** Is registered for use on public roads or property;

**b.** Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

**c.** Is being:

**(1)** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

**(2)** Rented to others;

**(3)** Used to carry persons or cargo for a charge; or

**(4)** Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

**2.** If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

**a.** In dead storage on an "insured location";

**b.** Used solely to service an "insured's" residence;

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

**(1)** Being used to assist a handicapped person; or

**(2)** Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

**(1)** Not owned by an "insured"; or

**(2)** Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions **B. 6.a., b., d., e.** or **h.**; or

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure



activity allowed by the facility;

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility; or

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

1. Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   **a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   **b.** Rented to others;

   **c.** Used to carry persons or cargo for a charge; or

   **d.** Used for any "business" purpose.

2. If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   **a.** Is stored;

   **b.** Is a sailing vessel, with or without auxiliary power, that is:

   **(1)** Less than 26 feet in overall length; or

   **(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

   **c.** Is not a sailing vessel and is powered by:

   **(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

   **(a)** 50 horsepower or less and not owned by an "insured"; or

   **(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

   **(2)** One or more outboard engines or motors with:

   **(a)** 25 total horsepower or less;

   **(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

   **(c)** More than 25 horsepower if the outboard engine or motor

is owned by an "insured" who acquired it during the policy period; or

**(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

**(i)** You declare them at policy inception; or

**(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period. Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E - Personal Liability And Coverage F - Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".



**b.** This Exclusion **E.2.** does not apply to:

   **(1)** The rental or holding for rental of an "insured location";

      **(a)** On an occasional basis if used only as a residence;

      **(b)** In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

      **(c)** In part, as an office, school, studio or private garage; and

   **(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E - Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

  **a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** - Additional Coverages;

  **b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

    **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

    **(2)** Where the liability of others is assumed by you prior to an "occurrence";

    unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided



or required to be provided by an "insured" under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

    **a.** Is also an insured under a nuclear energy liability policy issued by the:

        **(1)** Nuclear Energy Liability Insurance Association;

        **(2)** Mutual Atomic Energy Liability Underwriters;

        **(3)** Nuclear Insurance Association of Canada;

        or any of their successors; or

    **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definitions **5.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured":

    **a.** To repay; or

    **b.** Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F - Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

    **a.** Occurs off the "insured location"; and

    **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**3.** From any:

    **a.** Nuclear reaction;

    **b.** Nuclear radiation; or

    **c.** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

    **d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II - ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

**3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

**4.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

**1.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

**2.** We will not pay for "property damage":

    **a.** To the extent of any amount recoverable under Section **I;**

    **b.** Caused intentionally by an "insured" who is 13 years of age or older;

    **c.** To property owned by an "insured";

    **d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

    **e.** Arising out of:

        **(1)** A "business" engaged in by an "insured";

        **(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

        **(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".



This exclusion **e.(3)** does not apply to a "motor vehicle" that:

**(a)** Is designed for recreational use off public roads;

**(b)** Is not owned by an "insured"; and

**(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

    **a.** "Bodily injury" or "property damage" not excluded from coverage under Section **II** - Exclusions; or

    **b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

        **(1)** Is elected by the members of a corporation or association of property owners; and

        **(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph **I.** Policy Period under Section **II** - Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

    **a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

    **b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II - CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

    **a.** The identity of the policy and the "named insured" shown in the Declarations;

    **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

    **c.** Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

    **a.** To make settlement;

    **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

**Liberty Mutual.**
INSURANCE

**c.** With the conduct of suits and attend hearings and trials; and

**d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section **II** - Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person - Coverage F - Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

**a.** Give us written proof of claim, under oath if required, as soon as is practical; and

**b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim - Coverage F - Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**SECTIONS I AND II - CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

Liberty Mutual. INSURANCE

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

**(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

**(2)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** - Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.



| **\*MUTUAL POLICY CONDITIONS** |
| --- |

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class II.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

SECRETARY

PRESIDENT

Includes copyrighted material of Insurance Services Office,
with its permission.
Copyright, Insurance Services Office, Inc., 1999



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## IDENTITY FRAUD EXPENSE COVERAGE

For an additional premium, the following Extension of Coverage is added under Section I:

### IDENTITY FRAUD EXPENSE

We will pay up to $15,000 per occurrence and $30,000 per policy period for "expenses" incurred by an "insured" as the direct result of any one "identity fraud" which both (1) is commenced during the period during which this coverage was continuously in effect; and (2) is first reported no later than 30 days after the period during which this coverage was continuously in effect.

Any act or series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one "identity fraud," even if a series of acts continues into a subsequent policy period.

### DEFINITIONS

With respect to the provisions of this endorsement only, the following definitions are added:

"Expenses" mean any of the following which are directly related to a covered identity fraud:

1. Costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized.

2. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors.

3. Employer documented lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies and/or legal counsel, or to complete fraud affidavits, up to a maximum payment of $500 per week for a maximum period of four weeks.

4. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information. Such incorrect credit information must be directly related to a covered "identity fraud."

5. Reasonable attorney fees incurred, with our prior consent, for:

   a. Defense of lawsuits brought against the "insured" by merchants or their collection agencies;

   b. The removal of any criminal or civil judgments wrongly entered against an "insured"; and

   c. Challenging the accuracy or completeness of any information in a consumer credit report.

6. Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "identity fraud."

"Identity fraud" means the act of knowingly transferring or using, without lawful authority, a means of identification of an "insured" with the intent to commit, or to aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

### EXCLUSIONS

The following additional exclusions apply to this coverage.

We do not cover:

1. Loss arising out of "business" pursuits of any "insured."

2. "Expenses" incurred due to any fraudulent, dishonest or criminal act by any "insured" or person acting in concert with any "insured," or by any authorized representative of any "insured," whether acting alone or in collusion with others.

3. Loss other than "expenses."

### SPECIAL DEDUCTIBLE

The deductible for "identity fraud" coverage is $250.  No other deductible applies to "identity fraud" coverage.

### YOUR DUTIES AFTER LOSS

The following is added under **Section I - Conditions, B. Duties After Loss,** paragraph **8.**

   i. Receipts, bills or other records that support your claim for "expenses" under "identity fraud" coverage.

All other provisions of this policy apply.

POLICY NUMBER:



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# CREDIT CARD, ELECTRONIC FUND TRANSFER CARD OR ACCESS DEVICE, FORGERY AND COUNTERFEIT MONEY COVERAGE

**HOMEOWNERS**
**HO 04 53 10 00**

INCREASED LIMIT

**SCHEDULE\***

---

**SECTION I - PROPERTY COVERAGES**

   **ADDITIONAL COVERAGES**

     **6.   Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

       The limit of liability for this coverage is increased as noted below.

       **Increase In Limit Of Liability**                 **Total Limit Of Liability**

 

All other provisions of this policy apply.

---

\*Entries may be left blank if shown elsewhere in this policy for this coverage.

---

 Copyright, Insurance Services Office, Inc., 1999



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PREMISES ALARM OR FIRE PROTECTION SYSTEM**

**HOMEOWNERS**
**HO 04 16 10 00**

We acknowledge the installation of an alarm
system and/or automatic sprinkler system
approved by us on the "residence premises".
You agree to maintain this system or systems,
for which we have granted a credit, in working
order and to let us know promptly of any
change, including removal, made to the
system(s).

HO 04 16 10 00                Copyright, Insurance Services Office, Inc.,  1999                Page 1 of 1



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS - TEXAS

HOMEOWNERS
HO 01 42 06 04

## DEFINITIONS

The following are added to Paragraph **B.:**

**12.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**13.** "Business day" means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

## SECTION I - PROPERTY COVERAGES

For Form **HO 00 05,** Paragraph **E.10.k.(2)(d)** is deleted and replaced by the following:

**(d)** Caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

For all forms except **HO 00 08,** the following is added to Paragraph **E.11. Ordinance Or Law:**

**d.** If the insured property is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above, also applies to the increased cost you incur due to the repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

(This is Paragraph **C.11.** in Form **HO 00 04** and **D.10.** in Form **HO 00 06.**)

## SECTION I - PERILS INSURED AGAINST

For Forms **HO 00 02** and **HO 00 06,** Paragraph **12.b.(5)** is deleted and replaced by the following:

**(5)** Caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

For Form **HO 00 04,** Paragraph **12.b.(4)** is deleted and replaced by the following:

**(4)** Caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

**For Form HO 00 03:**

Paragraph **A.2.c.(5)** is deleted and replaced by the following:

**(5)** Constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

Paragraph **A.2.c.(6)(c)** is deleted and replaced by the following:

**(c)** Smog, rust or other corrosion, wet or dry rot;

Paragraph **B.12.b.(4)** is deleted and replaced by the following:

**(4)** Caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

For Form **HO 00 05:**

Paragraph **A.2.d.** is deleted and replaced by the following:

**d.** Constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

Paragraph **A.2.e.(3)** is deleted and replaced by the following:

**(3)** Smog, rust or other corrosion, wet or dry rot;

## SECTION I - EXCLUSIONS

**8. Intentional Loss** is deleted and replaced by the following:

**8. Intentional Loss**

**a.** Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage even "insureds" who did not commit or conspire to commit the act causing the loss.

**b.** However, this exclusion does not apply to an "insured" who did not cooperate in or contribute to the creation of the loss if that "insured" has:

© ISO Properties, Inc., 2003



**(1)** Filed a police report; and

**(2)** Cooperated with law enforcement investigation or prosecution relating to any other "insured" causing the intentional loss.

**c.** If we pay a claim pursuant to Paragraph **8.b.**, our payment to the "insured" is limited to that "insured's" insurable interest in the property less any payments we first made to a mortgagee or other party with a secured interest in the policy. In no event will we pay more than the limit of liability. As a condition of payment for intentional loss caused by another "insured" under this exception to the exclusion, we may require an assignment of rights of recovery to the extent that payment is made by us.

The following exclusion is added.

**10. "Fungi" Or Microbes**

**a.** "Fungi" or microbes, means the presence, growth, proliferation, spread or any activity of "fungi" or microbes.

This exclusion also applies to the cost:

**(1)** To remove "fungi" or microbes from property covered under Section **I** - Property Coverages;

**(2)** To tear out and replace any part of the building or other covered property as needed to gain access to the "fungi" or microbes; and

**(3)** Of testing of air or property to confirm the absence, presence or level of "fungi" or microbes;

**b.** Exclusion **10.a.** applies unless the "fungi" or microbes are located upon the portion of covered property which must be repaired or replaced because of direct physical damage resulting from sudden and accidental discharge or overflow of water which would otherwise be covered under this policy. For purposes of this exclusion, sudden and accidental shall include a loss event that is hidden or concealed for a period of time until it is detectable. A hidden loss must be reported to us no later than 30 days after the date it was detected or should have been detected.

**c.** However, the exception to the exclusion described in **10.b.** does not include:

**(1)** The cost to treat, contain, remove or dispose of the "fungi" or microbes beyond that which is required to repair or replace the covered property physically damaged by water;

**(2)** The cost of any testing of air or property to confirm the absence, presence or level of "fungi" or microbes whether performed prior to, during or after removal, repair, restoration or replacement;

**(3)** The cost of any decontamination of the "residence premises"; and

**(4)** Any increase in loss under Coverage **D** - Loss of Use and Additional Coverage **1.** Debris Removal resulting from **c.(1), (2)** and **(3)**.

Direct loss by fire, smoke, or explosion resulting from "fungi" or microbes is covered.

(This is Paragraph **A.10.** in Form **HO 00 03** and **HO 00 05.**)

**SECTION I - CONDITIONS**

The following paragraph is added to Paragraph **A.** Insurable Interest And Limit Of Liability:

**POLICY A LIQUIDATED DEMAND**

A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This provision shall not apply to personal property.

**B. Duties After Loss** is deleted and replaced by the following:

**B. Duties After Loss**

**1. Your Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an "insured" seeking coverage, or a representative of either:

**a.** Give prompt notice to us or our agent;

**b.** Notify the police in case of a loss by theft;

**c.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money Coverage under Section **I** - Property Coverages;

**d.** Protect the property from further damage. If repairs to the property are required, you must:

**(1)** Make reasonable and necessary repairs to protect the property; and

**(2)** Keep an accurate record of repair expenses;

**e.** Cooperate with us in the investigation of a claim;



f. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

g. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of another "insured", and sign the same;

h. Send to us, within 91 days after our request, your signed, sworn proof of loss on a standard form supplied by us. We must request a signed, sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

(1) This proof of loss shall set forth, to the best of your knowledge and belief:

(a) The time and cause of loss;

(b) The interests of all "insureds" and all others in the property involved and all liens on the property;

(c) Other insurance which may cover the loss;

(d) Changes in the title or occupancy of the property during the term of the policy;

(e) Specifications of the damaged buildings and detailed repair estimates;

(f) The inventory of damaged personal property described in **B.1.e.** above;

(g) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(h) Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** - Property Coverages, stating the amount and cause of loss.

(2) If you elect to make claim under the Replacement Cost Coverage of this policy, this proof of loss shall also state, to the best of your knowledge and belief:

(a) The replacement cost of the described dwelling;

(b) The replacement cost of any other building on which loss is claimed; or

(c) The full cost of repair or replacement of loss without deduction for depreciation.

2. **Our Duties After Loss**

a. No later than 15 days after we receive your written notice of claim, we must:

(1) Acknowledge receipt of the claim;

If our acknowledgment of the claim is not in writing, we will keep a record of the date, means and content of our acknowledgment;

(2) Begin any investigation of the claim;

(3) Specify the information you must provide in accordance with Paragraph **B.1.** Your Duties After Loss above;

We may request more information, if during the investigation of the claim such additional information is necessary.

b. After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

(1) Within 15 "business days"; or

(2) Within 30 days if we have reason to believe the loss resulted from arson;

c. If we do not approve payment of your claim or require more time for processing your claim, we must:

(1) Give the reason for denying your claim; or

(2) Give the reasons we require more time to process your claim. But we must either approve or deny your claim within 45 days after requesting more time.

For Forms **HO 00 02, HO 00 03** and **HO 00 05,** Paragraph **C.1.** in **Loss Settlement** is deleted and replaced by the following:

**C. Loss Settlement**

1. Property of the following types:



a. Personal property other than jewelry;
b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;
c. Structures that are not buildings; and
d. Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace:

For Form **HO 00 04, C. Loss Settlement** is deleted and replaced by the following:

**C. Loss Settlement**

1. Covered property losses other than jewelry are settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Jewelry losses are settled at replacement cost at the time of loss without deduction for depreciation.

For Form **HO 00 06, Paragraph C.1. in Loss Settlement** is deleted and replaced by the following:

**C. Loss Settlement**

1. Personal property and grave markers, including mausoleums at actual cash value at the time of loss but not more than the amount required to repair or replace. This does not include loss to jewelry.

For Form **HO 00 08, Paragraph C.1. in Loss Settlement** is deleted and replaced by the following:

**C. Loss Settlement**

1. Property of the following types:
   a. Personal property other than jewelry;
   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and
   c. Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

For all forms except **HO 00 04**, Paragraph **3.** is added to **C. Loss Settlement:**

3. Jewelry at replacement cost at the time of loss without deduction for depreciation.

**D. Loss To A Pair Or Set** is deleted and replaced by the following:

**D. Loss To A Pair Or Set**

1. In case of loss to a pair or set other than jewelry we may elect to:
   a. Repair or replace any part to restore the pair or set to its value before the loss; or
   b. Pay the difference between actual cash value of the property before

and after the loss.

2. Loss to a jewelry pair or set will be settled at replacement cost at the time of loss without deduction for depreciation.

**G. Suit Against Us** is deleted and replaced by the following:

**G. Suit Against Us**

No suit or action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy. Action brought against us must be started within two years and one day after the cause of action accrues.

**I. Loss Payment** is deleted and replaced by the following:

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to payment.

If we notify you that we will pay your claim, or part of your claim, we must pay within 5 "business days" after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 "business days" after the date you perform the act.

**K. Mortgage Clause** is deleted and replaced by the following:

**K. Mortgage Clause (Without Contribution)**

1. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear;

2. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building structure;

3. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:
   a. At our request, pays any premium due under this policy, if you have failed to do so;
   b. Submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so;
   c. Has notified us of any changes in ownership, occupancy or substantial changes in risk known to the mortgagee;

   All of the terms of this policy will then apply directly to the mortgagee. Failure of the mortgagee to comply with **3.a., 3.b.,** or **3.c.** above shall void this policy as to the interest of the mortgagee.



4. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   a. The mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay.

   b. The mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

   At our option, we may pay the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

5. If this policy is cancelled, we will give the mortgagee specifically named on the declarations page written notice of cancellation.

   If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to you.

   If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

   We will not give notice of cancellation to any successor or assignee of the mortgagee named in the policy.

6. If the property described under Coverage **A** - Dwelling or Coverage **B** - Other Structures is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premium from this policy.

   The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

7. If we elect not to renew this policy, the mortgagee specifically named on the declarations page will be given 30 days written notice of the nonrenewal.

The following conditions are added:

### RESIDENTIAL COMMUNITY PROPERTY CLAUSE

This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

### CATASTROPHE CLAIMS

If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown in **B.** Duties After Loss and **I.** Loss Payment is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

   a. Is declared a disaster under the Texas Disaster Act of 1975; or

   b. Is determined to be a catastrophe by the Texas Department of Insurance.

## SECTION II - EXCLUSIONS

Paragraph **E.1.** Expected Or Intended Injury is deleted and replaced by the following:

1. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" which is expected or intended by an "insured".

   However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

Paragraph **E.6.** Communicable Disease is deleted and replaced by the following:

6. **Communicable Disease**

   "Bodily injury" or "property damage" which arises out of the transmission of sickness or disease by an "insured" through sexual contact;

Paragraph **E.7.** Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse is deleted and replaced by the following:

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

   "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse.

   For the purposes of this exclusion, abuse means an act which is committed with the intent to cause harm; or

## SECTIONS I AND II - CONDITIONS

**C. Cancellation** is deleted and replaced by the following:

### C. Cancellation

1. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

2. We may cancel this policy at any time for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes effect.

© ISO Properties, Inc., 2003



**a.** If this policy has been in effect for less than 60 days and is not a renewal policy, we may not cancel this policy unless:

**(1)** We identify a condition that:

**(a)** Creates an increased risk of hazard;

**(b)** Was not disclosed in the application for insurance coverage; and

**(c)** Is not the subject of a prior claim;

**(2)** Before the effective date of the policy we do not accept a copy of a required inspection report that:

**(a)** Was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and

**(b)** Is dated not earlier than the 90th day before the effective date of the policy.

An inspection report is deemed accepted unless we reject it before the 11th day after the date we receive it;

**(3)** You do not pay the premium or any portion of the premium due;

**(4)** The Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state;

**(5)** You submit a fraudulent claim; or

**(6)** There is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium rate of this policy.

The effective date of cancellation cannot be before:

**(1)** The 10th day after we mail notice if we cancel for reasons **(3)**, **(4)**, **(5)**, or **(6)** above.

**(2)** The 30th day after we mail notice if we cancel for any other reason.

**b.** If this policy has been in effect 60 days or more, or at any time if it is a renewal policy, we may not cancel this policy unless:

**(1)** You do not pay the premium or any portion of the premium due.

**(2)** The Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

**(3)** You submit a fraudulent claim.

**(4)** There is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium rate of this policy.

The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation must state the reason for cancellation.

**3.** If we cancel, our notice to you will state that this refund is not included with the notice, it will be returned on demand.

**4.** We may not cancel this policy solely because you are an elected official.

**D. Nonrenewal** is deleted and replaced by the following:

**D. Refusal To Renew**

**1.** We may not refuse to renew this policy because of claims for losses resulting from natural causes.

**2.** We may not refuse to renew this policy solely because you are an elected official.

**3.** We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three-year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in **4.** below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under the policy.

**4.** If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the declarations page and any mortgagee named on the declarations page, written notice of our refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

All other provisions of this policy apply.

 © ISO Properties, Inc., 2003



# AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY**

*THIS ENDORSEMENT SUPERCEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS*

### DEFINITIONS

The introductory paragraph of Definitions is amended to read:

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and

1. the spouse of the "named insured" shown on the Declarations, if a resident of the same household; or

2. the partner in a civil union, registered domestic partnership, or similar union or partnership, with the "named insured" shown on the Declarations, if a resident of the same household.

Section 2., above, only applies if the civil union, registered domestic partnership or other similar union or partnership is validly entered into under the law of any state, territory or possession of the United States of America, any territory or province of Canada, or the equivalent of a state or province in any other country.

"We," "us" and "our" refer to the Company providing this insurance.

In Section **B.**, the definition for 12. "Fungi" is deleted, and the definition for 13. "Business Day" is deleted.  The following definitions are added to Section **B.**:

**12.** "Mold, Fungus, Wet Rot, Dry Rot, or Bacteria" means any type or form of fungus, rot, or bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, or bacteria.

**13.** "Remediation" means the reasonable and necessary treatment, containment, decontamination, removal or disposal of Mold, Fungus, Wet Rot, Dry Rot, or Bacteria caused by a covered water loss as required to complete the repair or replacement of property covered under Section I of the policy. "Remediation" includes payment for any loss of fair rental value or reasonable increase in additional living expenses that is necessary to maintain your normal standard of living if Mold, Fungus, Wet Rot, Dry Rot, or Bacteria resulting from a covered water loss makes your residence premises uninhabitable.  "Remediation" includes testing or investigation to detect, evaluate or measure Mold, Fungus, Wet Rot, Dry Rot, or Bacteria.

**14.** "Business day" means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

### SECTION I - PROPERTY COVERAGES

For form **HO 00 03,** Paragraph **A.1.a** in **Coverage A - Dwelling** is deleted and replaced by the following:

**a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling, and attached wall-to-wall carpeting;

For forms **HO 00 03, HO 00 06, and HO 00 04:**

### Coverage C - Personal Property

The introductory paragraph of section **3. Special Limits of Liability** is replaced with the following:

The special limit for each category below is the total limit for each loss for all property in that category.  If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply.  These special limits do not increase the Coverage C limit of liability.

Categories **b., c., d., e., f., i., j.,** and **k**. are deleted and replaced with the following:



a. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets, and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

b. $1000 on watercraft of all types, including their trailers, furnishings, equipment, and outboard engines or motors.

c. $1000 on trailers or semitrailers not used with watercraft of all types.

d. $1000 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

e. $2000 for loss by theft of firearms and related equipment.

i. $250 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

j. $1000 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs, or other media that can be used with any apparatus described in this Category **j.**

k. $1000 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k.**

The following limits are added after item **3.k.**:

l. $5000 on Electronic Data Processing equipment and recording or storage media or accessories used with that equipment. There is no coverage for said equipment, media, or accessories while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home.

m. $5000 on any one article and $10000 in the aggregate for loss by theft of any rug, carpet (excluding attached wall-to-wall carpet), tapestry, wall-hanging or other similar article.

n. $2500 in the aggregate for loss of any of the following whether or not they are part of a collection: trading cards, comic books, figurines, stamps, advertising materials, stuffed animals, dolls, sports and entertainment memorabilia, toys, games, militaria, and books.

o. $1200 for any one electrical appliance for loss by sudden and accidental damage from artificially generated electrical currents. This special limit does not apply to electronic data processing equipment or storage media.

For form **HO 00 03**:

If endorsement FMHO 3326 is included in the policy coverage for categories **b., c., d., e., f., i., j., k., l., m.,** and **n.,** are deleted. Coverage for category **o.** still applies.

For forms **HO 00 03, HO 00 06,** and **HO 00 04**:

**Coverage E. Additional Coverages**

Item **7. Loss Assessment** is deleted in its entirety.

For form **HO 00 03**:

Item **10. Landlord's Furnishings** is deleted in its entirety.

For forms **HO 00 03** and **HO 00 04**:

**Item 11. Ordinance Or Law**

The final sentence in this section, which reads "This coverage is additional insurance," is deleted.



For form **HO 00 06:**

Item **10. Ordinance Or Law**

The final sentence in this section, which reads "This coverage is additional insurance," is deleted.

For forms **HO 00 03, HO 00 06,** and **HO 00 04:**

Item **13. Mold, Fungus, Wet Rot, Dry Rot, or Bacteria** is added:

We provide up to $5,000 of coverage for **remediation** of "Mold, Fungus, Wet Rot, Dry Rot, or Bacteria" as required to complete the repair or replacement of property under Section I of the policy, that is damaged by a covered water loss.  This is not additional insurance and does not increase the limit of liability for Coverage A (Dwelling), Coverage B (Other Structures), Coverage C (Personal Property), or Coverage D (Loss of Use).

## SECTION I - PERILS INSURED AGAINST

For forms **HO 00 03:**

### Coverage A - Dwelling And Coverage B - Other Structures

Exception to c.(6) is deleted and replaced by the following:

**Unless otherwise excluded we cover damage to A - Dwelling and B - Other Structures from a Sudden and Accidental Discharge or overflow of Water or Steam** from within a plumbing or drain system, heating system, air conditioning system, or household appliance.

This coverage does not include loss:

    a.  directly or indirectly caused by or resulting from seepage, meaning continuous or repeated seepage or leakage of water or steam over a period of more than fourteen days:

        1.  From a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or

        2.  From within or around any plumbing fixtures, including, but not limited to, shower stalls, shower pans, shower baths, tub installations, sinks or other fixtures, including ceilings, walls, or floors.

    b.  to the system or appliance from which the water or steam escaped. We will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the heating system, air conditioning system, plumbing supply or drain system, or household appliance. However, such tear out and replacement coverage only applies if the water or steam causes actual damage to a building on the "residence premises."

    c.  caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

In the event of a covered loss resulting from sudden and accidental discharge of water from a plumbing or drain system located within or under the slab or foundation of the dwelling, we will pay no more than a total amount of 5% of the Coverage A (Dwelling) limit of liability or $3,500, whichever is greater, for:

1.  the cost you incur to tear out and replace any part of the building necessary to access, repair, or replace that part of such plumbing or drain system; or

2.  the cost you incur to reroute the plumbing or drain system.

This coverage does not include loss to the plumbing or drain system from which the water or steam escaped. Such tear out and replacement coverage only applies if the water or steam causes actual damage to a building on the "residence premises".

The following item is added to A.2.c.(6):

    **(i)** Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

## SECTION I - EXCLUSIONS

For forms **HO 00 03, HO 00 06,** and **HO 00 04:**



**10. "Fungi" Or Microbes** is replaced with the following:

**10. "Fungi" Or Microbes**

    **a.** **"Mold, Fungus, Wet Rot, Dry Rot, or Bacteria" means any type or form of fungus, rot, or bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, or bacteria. This exclusion also applies to the cost:**

        **(1)** To remove Mold, Fungus, Wet Rot, Dry Rot, or Bacteria from property covered under Section **I** - Property Coverages;

        **(2)** To tear out and replace any part of the building or other covered property as needed to gain access to the Mold, Fungus, Wet Rot, Dry Rot, or Bacteria; and

        **(3)** Of testing of air or property to confirm the absence, presence or level of Mold, Fungus, Wet Rot, Dry Rot, or Bacteria;

    **b.** Exclusion **10.a.** applies unless the Mold, Fungus, Wet Rot, Dry Rot, or Bacteria are located upon the portion of covered property that must be repaired or replaced because of direct physical damage resulting from sudden and accidental discharge or overflow of water that would otherwise be covered under this policy.

    **c.** However, the exception to the exclusion described in **10.b.** does not include:

        **(1)** The cost to treat, contain, remove or dispose of the Mold, Fungus, Wet Rot, Dry Rot, or Bacteria beyond that which is required to repair or replace the covered property physically damaged by water;

        **(2)** The cost of any testing of air or property to confirm the absence, presence or level of Mold, Fungus, Wet Rot, Dry Rot, or Bacteria whether performed prior to, during or after removal, repair, restoration or replacement;

        **(3)** The cost of any decontamination of the "residence premises"; and

        **(4)** Any increase in loss under Coverage **D** - Loss of Use and Additional Coverage **1.** Debris Removal resulting from **c.(1), (2)** and **(3).**

Direct loss by fire, smoke, or explosion resulting from Mold, Fungus, Wet Rot, Dry Rot, or Bacteria is covered.

**SECTION I** - **CONDITIONS**

For forms **HO 00 03, HO 00 06,** and **HO 00 04:**

**A.** **Insurable Interest And Limit of Liability** is replaced with the following:

**A.** **Insurable Interest and Limit of Liability.**  Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    1.   to the **insured** for more than the amount of the **insured's** interest at the time of loss; or

    2.   for more than the applicable limit of liability.

Each time there is a loss to any building insured under Coverage A (Dwelling), the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss.  As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the declarations page.

**B.** **Duties After Loss** is deleted and replaced by the following:

**B.** **Duties After Loss**

    **1.** **Your Duties After Loss**

        In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an "insured" seeking coverage, or a representative of either:

        **a.** Give prompt notice to us or our agent;

        **b.** Notify the police in case of a loss by theft and provide them with a full, complete and accurate inventory of the property damaged, stolen or removed.

        **c.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money Coverage under Section **I** - Property Coverages;

        **d.** Protect the property from further damage. If repairs to the property are required, you must:



**(1)** Make reasonable repairs and necessary repairs to protect the property; and

**(2)** Keep an accurate record of repair expenses;

**e.** Cooperate with us in the investigation of a claim;

**f.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**g.** As often as we reasonably require:

**(1)** Show the damaged property;

**(2)** Authorize us to obtain records and documents we request and permit us to make copies; and

**(3)** Submit to examination under oath, while not in the presence of any other "insured," and sign and swear to the same;

**h.** Send to us, within 91 days after our request, your signed, sworn proof of loss on a standard form supplied by us. We must request a signed, sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

**(1)** This proof of loss shall set forth, to the best of your knowledge and belief:

**(a)** The time and cause of loss;

**(b)** The interests of all "insureds" and all others in the property involved and all liens on the property;

**(c)** Other insurance which may cover the loss;

**(d)** Changes in the title or occupancy of the property during the term of the policy;

**(e)** Specifications of the damaged buildings and detailed repair estimates;

**(f)** The inventory of damaged personal property described in **B.1.e.** above;

**(g)** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

**(h)** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I - Property Coverages, stating the amount and cause of loss.

For form **HO 00 03** the following section is added to **B) Duties After Loss**

**(2)** If you elect to make claim under the Replacement Cost Coverage of this policy, this proof of loss shall also state, to the best of your knowledge and belief:

**(a)** The replacement cost of the described dwelling;

**(b)** The replacement cost of any other building on which loss is claimed; or

**(c)** The full cost of repair or replacement of loss without deduction for depreciation.

**2. Our Duties After Loss**

**a.** No later than 15 days after we receive your written notice of claim, we must:

**(1)** Acknowledge receipt of the claim;

If our acknowledgment of the claim is not in writing, we will keep a record of the date, means and content of our acknowledgment;

**(2)** Begin any investigation of the claim;

**(3)** Specify the information you must provide in accordance with Paragraph **B.1.** Your Duties After Loss above;

We may request more information, if during the investigation of the claim such additional information is necessary.

**b.** After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

**(1)** Within 15 "business days"; or

**(2)** Within 30 days if we have reason to believe the loss resulted from arson;

**c.** If we do not approve payment of your claim or require more time for processing your claim, we must:

**(1)** Give the reason for denying your claim;

**(2)** Give the reasons we require more time to process your claim. But we must either approve or deny your claim within 45 days after requesting more time.



For forms **HO 00 03, HO 00 06, and HO 00 04:**

**C. Loss Settlement** is deleted and replaced by the following:

**C. Loss Settlement.**  Covered property losses are settled as follows:

1. Our limit of liability and payment for covered losses to personal property will not exceed the smallest of the following:

   a. the limit of liability under this policy that applies to the damaged or destroyed property;

   b. for property that is repairable, the cost to repair or replace the damaged property with material of like kind and quality, with no deduction for depreciation; or

   c. the interest of the **insured**; or

   d. the replacement cost at the time of loss.

   We do not pay replacement cost for:

   (1) property which cannot be replaced.

   (2) property not maintained in good or workable condition.

   (3) property that is either obsolete or useless to the **insured** at the time of loss.

   (4) property that is not repaired or replaced.

   For property covered under Coverage C:

   (a) We will pay you:

   (i)  the replacement cost of your damaged property up to $1,500; and

   (ii)  the actual cash value of your remaining damaged property

   within 5 business days after we notify you that we will pay the claim.

   If you repair or replace the damaged property, you may make claim for reimbursement on a replacement cost basis for the replacement cost of your property exceeding $1,500.  You must repair, restore or replace the property within 365 days after the loss.  Reimbursement will be made within 5 business days after we receive proof that the property has been repaired, restored, or replaced.

   (b) In lieu of (a) above, we may offer and you may accept or reject our offer to provide a replacement item of like kind and quality for your damaged property.

For form **HO 00 03** only, Paragraph C.2 in **Loss Settlement** is deleted and replaced by the following:

2. Our limit of liability and payment for covered losses to dwelling (including wall to wall carpeting) and other structure(s) under Coverage A (Dwelling) and Coverage B (Other Structures), except cloth awning and fences, will be at replacement cost settlement subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building structure(s) is 80% or more of the full replacement cost of the building structure(s) immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

   (1) the limit of liability under this policy that applies to the damaged or destroyed building structure(s);

   (2) the cost to repair or replace that part of the building structure(s) damaged, with material of like kind and quality and for the same use and occupancy on the same premises; or

   (3) the necessary amount actually spent to repair or replace the damaged building structure(s).

   b. If, at the time of loss, the amount of insurance in this policy on the damaged building structure(s) is less than 80% of the full replacement cost of the building structure(s) immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building structure(s):

   (1) the actual cash value of that part of the building structure(s) damaged; or

   (2) that proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building structure(s) damaged, which the total amount of insurance in this policy on the damaged building structure(s) bears to 80% of the replacement cost of the building structure(s).



    c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building structure(s) immediately before the loss, do not include the value of:

       (1) excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

       (2) those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

       (3) underground flues, pipes, wiring and drains.

    d. The applicable limit of liability for roof surfacing, roof vents and roof flashing materials for Buildings under Coverage A or B is the actual cash value at the time of loss but not more than the amount required to repair or replace if the loss to the roof surfacing materials is caused by the peril of Windstorm or Hail and the policy is endorsed with the Actual Cash Value Loss Settlement Windstorm or Hail Losses to Roof Surfacing endorsement.

We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of 2.a. and 2.b. above.

However, if the cost to repair or replace the damage is both:

       (a) less than 5% of the amount of insurance in this policy on the building structure(s); and

       (b) less than $2,500

We will settle the loss according to the provisions of 2.a. and 2.b. above whether or not actual repair or replacement is complete.

You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to building structure(s) on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition **C. Loss Settlement**.

   3. Our limit of liability and payment for covered losses to cloth awning and fences, will be at actual cash value at the time of loss but not more than the amount required to repair or replace.

**D. Loss To A Pair Or Set** is deleted and replaced by the following:

**D. Loss To A Pair Or Set**

   **1.** In case of loss to a pair or set other than jewelry we may elect to:

     **a.** Repair or replace any part to restore the pair or set to its value before the loss; or

     **b.** Pay the difference between actual cash value of the property before and after the loss.

   **2.** Loss to a jewelry pair or set will be settled at replacement cost at the time of loss without deduction for depreciation.

**G. Suit Against Us** is deleted and replaced by the following:

**G. Suit Against Us**

No suit or action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy. Action brought against us must be started within two years and one day after the cause of action accrues.

**I. Loss Payment** is deleted and replaced by the following:

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to payment.

If we notify you that we will pay your claim, or part of your claim, we must pay within 5 "business days" after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 "business days" after the date you perform the act.

**J. Abandonment of Property** is replaced with the following:

**J. Abandonment or Property.** There can be no abandonment of property to us.

For forms **HO 00 03** and **HO 00 06**:

**K. Mortgage Clause** is deleted and replaced by the following:



**K. Mortgage Clause (Without Contribution)**

1. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear;

2. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building structure;

3. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

    a. At our request, pays any premium due under this policy, if you have failed to do so;

    b. Submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so;

    c. Has notified us within 60 days of any changes in ownership, occupancy or substantial changes in risk known to the mortgagee;

    All of the terms of this policy will then apply directly to the mortgagee.

    Failure of the mortgagee to comply with **3.a., 3.b.,** or **3.c.** above shall void this policy as to the interest of the mortgagee.

4. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

    a. The mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay.

    b. The mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

    At our option, we may pay the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

5. If this policy is cancelled, we will give the mortgagee specifically named on the declarations page written notice of cancellation.

    If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to you.

    If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

    We will not give notice of cancellation to any successor or assignee of the mortgagee named in the policy.

6. If the property described under Coverage **A** - Dwelling or Coverage **B** - Other Structures is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premium from this policy.

    The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

For forms **HO 00 03, HO 00 06,** and **HO 00 04:**

The following items are added:

S. **Salvage Rights.** If we notify you that we will pay your claim or part of your claim, the notice must also state whether we will or will not take all or any part of the damaged property.  We must bear the expense of our salvage rights.



**T.** **Residential Community Property Clause**

This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

**U.** **Catastrophe Claims**

If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown in **B.** Duties After Loss and **I.** Loss Payment is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

a. Is declared a disaster under the Texas Disaster Act of 1975; or

b. Is determined to be a catastrophe by the Texas Department of Insurance.

**V.** **Notice of Settlement**

We shall notify the named insured in writing of initial offer to compromise or settle a claim against the insured made under a casualty policy issued to the named insured - notice must be given not later than the 10th day after the date on which the offer is made.  In addition, we shall notify the named insured in writing of any settlement of a claim against the insured made under a casualty policy issued to the named insured - notice must be given not later than the 30th day after the date of the settlement.  EXCEPTION - This article does not apply to a casualty policy that requires the insured's consent to settlement of a claim against an insured or to fidelity, surety or guaranty bonds or to marine insurance as defined by Section 1807.001.

## SECTION II - EXCLUSIONS

**E. Coverage E - Personal Liability And Coverage F - Medical Payments To Others**

Paragraph **E.7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse** is deleted and replaced by the following:

**7.** **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

For the purpose of this endorsement, abuse means an act which is committed with the intent to cause harm.

"Bodily injury" or "property damage" arising out of the actual or attempted:

**a.** abuse, molestation, exploitation, assault or other mistreatment of any person; or

**b.** rape, sexual assault, or other sexual abuse of any person; or

The following exclusions are added to Item **E. Coverage E - Personal Liability And Coverage F - Medical Payments to Others**

**9.** "Bodily Injury" or "property damage" consisting of, resulting from, arising out of, aggravated by or in any way caused by, in whole or in part, by "Mold, Fungus, Wet Rot, Dry Rot, or Bacteria".

**10.** Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" consisting of, resulting from, arising out of, aggravated by or in any way caused by, in whole or in part, by "Mold, Fungus, Wet Rot, Dry Rot, or Bacteria".

## SECTION II - ADDITIONAL COVERAGES

For form **HO 00 03:**

Item **D. Loss Assessment** is deleted in its entirety.

## SECTION I AND II - CONDITIONS

For forms **HO 00 03, HO 00 06,** and **HO 00 04:**

**C. Cancellation** is deleted and replaced by the following:

**C. Cancellation**

**1.** You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will refund the appropriate portion of any unearned premium not later than the 15th business day after the effective date of cancellation or termination of this policy.

**2.** We may cancel this policy at any time for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes effect.

**a.** If this policy has been in effect for less than 60 days or more and is not a renewal policy, we may not cancel this policy unless:



**(1)** We identify a condition that:

    **(a)** Creates an increased risk of hazard;

    **(b)** Was not disclosed in the application for insurance coverage; and

    **(c)** Is not the subject of a prior claim;

**(2)** Before the effective date of the policy we do not accept a copy of a required inspection report that:

    **(a)** Was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and

    **(b)** Is dated not earlier than the 90th day before the effective date of the policy.

    An inspection report is deemed accepted unless we reject it before the 11th day after the date we receive it;

**(3)** You do not pay the premium or any portion of the premium due;

**(4)** The Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state;

**(5)** You submit a fraudulent claim; or

**(6)** There is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium rate of this policy.

The effective date of cancellation cannot be before:

    **(1)** The 10th day after we mail notice if we cancel for reasons **(3), (4), (5), or (6)** above.

    **(2)** The 30th day after we mail notice if we cancel for any other reason.

**b.** If this policy has been in effect 60 days or more, or at any time if it is a renewal policy, we may not cancel this policy unless:

    **(1)** You do not pay the premium or any portion of the premium due.

    **(2)** The Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

    **(3)** You submit a fraudulent claim.

    **(4)** There is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium rate of this policy.

**3.** We may not cancel this policy solely because you are an elected official.

**D. Nonrenewal** is deleted and replaced by the following:

**D. Refusal To Renew**

1. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

2. We may not refuse to renew this policy solely because you are an elected official.

3. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

    If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three-year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in 4. below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

    A claim does not include a claim that is filed but is not paid or payable under the policy.



4. If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the declarations page and any mortgagee named on the declarations page, written notice of our refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

The introductory paragraph of **G. Death** is amended to read:

If any person named in the Declarations or the spouse, if a resident of the same household; or the partner in a civil union, registered domestic partnership or similar union or partnership, if a resident of the same household, dies:

The following Condition is added:

**H. Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

**SMALL BOAT AND MOTOR FORM**

If endorsement FMHO 696 is included in the policy the following applies

**6. Peril Insured Against:** (h) is deleted and replaced by the following

(h) Loss or damage intentionally caused by an insured.  However, this exclusion does not apply to an insured who did not cooperate in or contribute to the creation of the loss if that insured has:

1. Filed a police report; and

2. Cooperated with law enforcement investigating or prosecution relating to any other insured causing the intentional loss.

For form **HO 00 03:**

**INFLATION PROTECTION ENDORSEMENT**

If endorsement FMHO 2835 is included in the policy the following applies

**Coverage B, Structure;** is deleted and replaced by the following

Coverage B - Other Structures;

---

All other policy terms and conditions apply.



## INFLATION PROTECTION ENDORSEMENT

It is agreed that the limits of liability for:

Coverage A, Dwelling;

Coverage B, Structure;

Coverage C, Personal Property;

and Coverage D, Loss of Use,

shall be raised by the rate of increase in the latest available information on residential building cost inflation.

### METHOD

To find the limits of liability on a given date, the Index Level the Company assigns to that date will be divided by the Index Level for the effective date of this Endorsement. This Factor is then multiplied by the limit for Coverages A, B, C and D separately.

If during this policy's term the Coverage A limit is changed at the insured's request, the effective date of this Endorsement is amended to the effective date of such change.

This Endorsement shall not reduce the limits of liability to less than the amount shown on:

a. The policy; or

b. The most recent Homeowners Policy Renewal Declaration.

This Endorsement must be attached to Change Endorsement when issued after the policy is written.



THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# **NO** SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# **LIMITED** SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

HOMEOWNERS
HO 04 96 10 00

**A.** "Business", as defined in the policy, means:

1. A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

2. Any other activity engaged in for money or other compensation, except the following:

   **a.** One or more activities:

      **(1)** Not described in **b.** through **d.** below; and

      **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

   **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

   **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

   **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

1. That an "insured" engages in for money or other compensation; and

2. From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

1. Described in **A.2.** above, and

2. Engaged in for money by a single "insured";

may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

1. Does not provide:

   **a.** Section **II** coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section II - Exclusions;

   **b.** Coverage, under Section **I**, for other structures from which any "business" is conducted; and

2. Limits Section **I** coverage, under Coverage **C** - Special Limits of Liability, for "business" property:

   **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (**e.** in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";

   **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i.** (**f.** in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (**g.** and **h.** respectively in Form **HO 00 08**).



## ARSON REWARD

The following Additional Coverage is added to SECTION I - PROPERTY COVERAGES, Additional Coverages:

**Arson Reward.** We will pay up to $5,000 for information which leads to an arson conviction in connection with a fire loss covered by this policy.  Regardless of the number of persons providing information, our limit shall not be increased.  This $5,000 limit is in addition to the limit of liability applicable to the damaged or destroyed property.

El Paso County - 243rd District Court
Case 3:17-cv-00128-DB Document 1-1 Filed 04/26/17 Page 70 of 85
Filed 2/28/2017 1:10:45 PM
Norma Favela Barceleau
District Clerk
El Paso County
2017DCV0689

**CIVIL CASE INFORMATION SHEET**

| | |
|---|---|
| CAUSE NUMBER *(FOR CLERK USE ONLY)*: _____ | COURT *(FOR CLERK USE ONLY)*: _____ |

STYLED ___Manuel J, Corral and Lorena Corral v. Liberty Mutual Insurance Company and Kevin Brown___

*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

### 1. Contact information for person completing case information sheet:

| Name: Brent L. Klender | Email: bklender@waynewright.com |
|---|---|
| Address: 5707 Interstate Ten West | Telephone: (210) 734-7077 |
| City/State/Zip: San Antonio  TX 78201 | Fax: (210) 734-9965 |
| Signature: | State Bar No: 24095204 |

**Names of parties in case:**

Plaintiff(s)/Petitioner(s):

Manuel J, Corral

Lorena Corral

Defendant(s)/Respondent(s):

Liberty Mutual Insurance Company

Kevin Brown

[Attach additional page as necessary to list all parties]

**Person or entity completing sheet is:**
- ☑ Attorney for Plaintiff/Petitioner
- ☐ *Pro Se* Plaintiff/Petitioner
- ☐ Title IV-D Agency
- ☐ Other:

**Additional Parties in Child Support Case:**

Custodial Parent:

Non-Custodial Parent:

Presumed Father:

### 2. Indicate case type, or identify the most important issue in the case *(select only 1)*:

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☑ Consumer/DTPA<br>☐ Debt/Contract<br>☐ Fraud/Misrepresentation<br>☐ Other Debt/Contract:<br>_____<br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☐ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract:<br>_____ | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional Liability:<br>_____<br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability List Product:<br>_____<br>☐ Other Injury or Damage:<br>_____ | ☐ Eminent Domain/ Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property:<br>_____<br><br>**Related to Criminal Matters**<br>☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus— Pre-indictment<br>☐ Other: _____ | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☐ With Children<br>☐ No Children<br><br><br><br>**Other Family Law**<br>☐ Enforce Foreign Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities of Minority<br>☐ Other: _____ | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order<br><br>**Parent-Child Relationship**<br>☐ Adoption/Adoption with Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Parentage/Paternity<br>☐ Termination of Parental Rights<br>☐ Other Parent-Child:<br>_____ |

| **Employment** | **Other Civil** | |
|---|---|---|
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment:<br>_____ | ☐ Administrative Appeal<br>☐ Antitrust/Unfair Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other: _____ |

| **Tax** | **Probate & Mental Health** | |
|---|---|---|
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: _____ |

### 3. Indicate procedure or remedy, if applicable *(may select more than 1)*:

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court<br>☐ Arbitration-related<br>☐ Attachment<br>☐ Bill of Review<br>☐ Certiorari<br>☐ Class Action | ☐ Declaratory Judgment<br>☐ Garnishment<br>☐ Interpleader<br>☐ License<br>☐ Mandamus<br>☐ Post-judgment | ☐ Prejudgment Remedy<br>☐ Protective Order<br>☐ Receiver<br>☐ Sequestration<br>☐ Temporary Restraining Order/Injunction<br>☐ Turnover |

### 4. Indicate damages sought *(do not select if it is a family law case)*:

- ☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
- ☐ Less than $100,000 and non-monetary relief
- ☑ Over $100, 000 but not more than $200,000
- ☐ Over $200,000 but not more than $1,000,000
- ☐ Over $1,000,000

CAUSE NUMBER: 2017DCV0089

SHERIFF   E-FILE

AGENT/INDIVIDUAL:_____ ATTY.:_____

☐ CAPIAS

☐ CITATION PERSONAL SERVICE

☐ CITATION BY MAIL: ☐ Regular ☐ Certified

☐ CITATION NON-RESIDENT

☐ CITATION BY ☐ PUBLICATION ☐ POSTING

☐ NTC TO SHOW CAUSE

☐ PROTECTIVE ORDER

☐ SUBPOENA(S)

☐ TRO

☐ OTHER:

Rec'd (Clock Stamp)

2017 MAR -1  PM 3: 24

EL PASO COUNTY TEXAS

BY

DEPUTY

☐ PAUPER'S OATH   ☐ *RUSH*   APPROVED BY:_____

CLERK ISSUING SERVICE:_____   DATE COMPLETED: 3/3/17

RECEIVED BY: _Alena Griswold_   DATE RECEIVED: ___/___/___

Attn: The District Clerk's Office is not responsible for any errors after the request is received by the requesting individual;
   Please review your request for accuracy

# THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you, or your attorney, do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

TO: **LIBERTY MUTUAL INSURANCE COMPANY,** which may be served with process by serving its registered agent, **CORPORATION SERVICE COMPANY,** at **211 EAST 7TH ST., SUITE 620, AUSTIN, TX 78701-3218.**

Greetings:

You are hereby commanded to appear by filing a written answer to the Plaintiff's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable **243rd Judicial District Court,** El Paso County, Texas, at the Court House of said County in El Paso, Texas.

Said Plaintiff's Petition was filed in said court on the 28th day of February, 2017 by Attorney at Law, BRENT L. KLENDER, 5707 INTERSTATE TEN WEST, SAN ANTONIO, TX 78201 in this case numbered **2017DCV0689** on the docket of said court, and styled:

**MANUEL J. CORRAL and LORENA CORRAL**
**VS**
**LIBERTY MUTUAL INSURANCE COMPANY and KEVIN BROWN**

The nature of Plaintiff's demand is fully shown by a true and correct copy of the Plaintiff's Original Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at El Paso, Texas, on the 3rd day of March, 2017.

CLERK OF THE COURT

**NORMA FAVELA BARCELEAU**
District Clerk
El Paso County Courthouse
500 E. San Antonio Ave, RM 103
El Paso, Texas 79901

Attest:  NORMA FAVELA BARCELEAU  District Clerk
El Paso County, Texas

By:_____, Deputy
Veronica Cables

Rule 106: "-the citation shall be served by the officer delivering to each defendant, in person, a true copy of the citation with the

date of delivery endorsed thereon and with a copy of the petition attached thereto."

**RETURN**

Came on hand on _____ day of _____, 20_____, at _____ o'clock
_____M., and executed in _____ County, Texas, by delivering to
each of the within-named defendants, in person, a true copy of this Citation, having first endorsed thereon
the date of delivery, together with the accompanying true and correct copy of the Plaintiff's Original
Petition, at the following times and places, to-wit:

| NAME | DATE | | | TIME | | | Place, and Course and Distance From Court House |
|------|------|---|---|------|---|---|------|
| | MONTH | DAY | YEAR | Hour | Min. | .M. | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

And not executed as to the defendant, _____

_____

the diligence used in finding said defendant, being _____

and the cause of failure to execute this process is: _____

and the information received as to the whereabouts of the said defendant, being _____

FEES—SERVING _____ cop _____ $ _____  _____ Sheriff

_____  _____ County, Texas

Total _____ $ _____  By _____, Deputy

**CERTIFICATE OF DELIVERY**

I do hereby certify that I delivered to _____,

_____ on the _____ day of _____,

20_____, at _____o'clock ____m. this copy of this instrument.

_____, Sheriff/Agent

_____County, Texas

By _____, Deputy/Agent

**SUBSCRIBED AND SWORN TO BEFORE ME ON THE _____ DAY OF _____, 20_____.**

**(SEAL)**

_____

**NOTARY PUBLIC, STATE OF TEXAS**

# THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you, or your attorney, do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

**TO:** **KEVIN BROWN, who may be served with process at 4541 BELLAIRE DR. SOUTH, FORTH WORTH, TX 76109 or wherever he/she may be found.**

Greetings:

You are hereby commanded to appear by filing a written answer to the Plaintiff's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable **243rd Judicial District Court,** El Paso County, Texas, at the Court House of said County in El Paso, Texas.

Said Plaintiff's Petition was filed in said court on the 28th day of February, 2017 by Attorney at Law, BRENT L. KLENDER, 5707 INTERSTATE TEN WEST, SAN ANTONIO, TX 78201 in this case numbered **2017DCV0689** on the docket of said court, and styled:

**MANUEL J. CORRAL and LORENA CORRAL**
**VS**
**LIBERTY MUTUAL INSURANCE COMPANY and KEVIN BROWN**

The nature of Plaintiff's demand is fully shown by a true and correct copy of the Plaintiff's Original Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at El Paso, Texas, on the 3rd day of March, 2017.

CLERK OF THE COURT

**NORMA FAVELA BARCELEAU**
District Clerk
El Paso County Courthouse
500 E. San Antonio Ave, RM 103
El Paso, Texas 79901

Attest: ___NORMA FAVELA BARCELEAU___ District Clerk
El Paso County, Texas

By:_____, Deputy
Veronica Cables

Rule 106: "-the citation shall be served by the officer delivering to each defendant, in person, a true copy of the citation with the date of delivery endorsed thereon and with a copy of the petition attached thereto."

## RETURN

Came on hand on _____ day of _____, 20_____, at _____ o'clock _____M., and executed in _____ County, Texas, by delivering to each of the within-named defendants, in person, a true copy of this Citation, having first endorsed thereon the date of delivery, together with the accompanying true and correct copy of the Plaintiff's Original Petition, at the following times and places, to-wit:

| NAME | DATE | | | TIME | | | Place, and Course and Distance From Court House |
|------|------|---|---|------|---|---|----|
| | MONTH | DAY | YEAR | Hour | Min. | ___.M. | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

And not executed as to the defendant, _____

_____

the diligence used in finding said defendant, being _____

and the cause of failure to execute this process is: _____

and the information received as to the whereabouts of the said defendant, being _____

FEES—SERVING _____ cop _____ $ _____   _____ Sheriff

_____   _____ County, Texas

Total _____ $ _____   By _____, Deputy

## CERTIFICATE OF DELIVERY

I do hereby certify that I delivered to _____,

_____ on the _____ day of _____,

20_____, at _____o'clock ____m. this copy of this instrument.

_____, Sheriff/Agent

_____County, Texas

By _____, Deputy/Agent

SUBSCRIBED AND SWORN TO BEFORE ME ON THE _____ DAY OF _____, 20_____.

(SEAL)

_____

NOTARY PUBLIC, STATE OF TEXAS

# THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you, or your attorney, do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

TO: **LIBERTY MUTUAL INSURANCE COMPANY,** which may be served with process by serving its registered agent, **CORPORATION SERVICE COMPANY,** at **211 EAST 7TH ST., SUITE 620, AUSTIN, TX 78701-3218.**

Greetings:

You are hereby commanded to appear by filing a written answer to the Plaintiff's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable **243rd Judicial District Court,** El Paso County, Texas, at the Court House of said County in El Paso, Texas.

Said Plaintiff's Petition was filed in said court on the 28th day of February, 2017 by Attorney at Law, BRENT L. KLENDER, 5707 INTERSTATE TEN WEST, SAN ANTONIO, TX 78201 in this case numbered **2017DCV0689** on the docket of said court, and styled:

**MANUEL J. CORRAL and LORENA CORRAL**
VS
**LIBERTY MUTUAL INSURANCE COMPANY and KEVIN BROWN**

The nature of Plaintiff's demand is fully shown by a true and correct copy of the Plaintiff's Original Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at El Paso, Texas, on the 3rd day of March, 2017.

CLERK OF THE COURT

**NORMA FAVELA BARCELEAU**
District Clerk
El Paso County Courthouse
500 E. San Antonio Ave, RM 103
El Paso, Texas 79901

Attest: __NORMA FAVELA BARCELEAU__ District Clerk
El Paso County, Texas

By: _Veronica Cables_ , Deputy
Veronica Cables

Rule 106: "-the citation shall be served by the officer delivering to each defendant, in person, a true copy of the citation with the date of delivery endorsed thereon and with a copy of the petition attached thereto."

1318098

## RETURN

Came on hand on _____ day of _____, 20____, at _____ o'clock ____M., and executed in _____ County, Texas, by delivering to each of the within-named defendants, in person, a true copy of this Citation, having first endorsed thereon the date of delivery, together with the accompanying true and correct copy of the Plaintiff's Original Petition, at the following times and places, to-wit:

| NAME | DATE MONTH | DAY | YEAR | TIME Hour | Min. | .M. | Place, and Course and Distance From Court House |
|------|------------|-----|------|-----------|------|-----|------------------------------------------------|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

And not executed as to the defendant _____

_____

the diligence used in finding said defendant, being _____

and the cause of failure to execute this process is: _____

and the information received as to the whereabouts of the said defendant, being _____

FEES—SERVING ____ cop _____ $ _____ _____ Sheriff

_____ _____ County, Texas

Total _____ $ _____ By _____, Deputy

## CERTIFICATE OF DELIVERY

I do hereby certify that I delivered to _____,

_____ on the _____ day of _____,

20_____, at _____ o'clock ____m. this copy of this instrument.

_____, Sheriff/Agent

_____County, Texas

By _____, Deputy/Agent

SUBSCRIBED AND SWORN TO BEFORE ME ON THE _____ DAY OF _____, 20_____.

(SEAL)

_____

NOTARY PUBLIC, STATE OF TEXAS

## CAUSE NO. 2017DCV0689

| MANUEL J. CORRAL AND LORENA CORRAL | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| VS. | § | 243RD JUDICIAL DISTRICTCOURT |
| | § | |
| LIBERTY MUTUAL INSURANCE COMPANY AND KEVIN BROWN | § | |
| | | |
| Defendant. | § | EL PASO COUNTY, TEXAS |

### AFFIDAVIT OF SERVICE - CERTIFIED MAIL

On this day personally appeared **Teresa Ramos** who, being by me duly sworn, deposed and said:

"The following came to hand on **March 20, 2017, 8:00 am,**

#### CITATION AND PLAINTIFF'S ORIGINAL PETITION ,

and was executed on **March 27 2017** by mailing to **LIBERTY MUTUAL INSURANCE COMPANY BY DELIVERING TO ITS REGISTERED AGENT CORPORATION SERVICE COMPANY** at **211 EAST 7TH STREET , AUSTIN , TEXAS 78701**, by regular mail and by Certified Mail, Return Receipt Requested, Receipt No. **7015 3430 0001 0199 3897**, a true copy of this citation.

The regular mail envelope **WAS NOT** returned. PS Form 3811 was returned on **March 29, 2017** having been **March 27, 2017** and is attached hereto.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

**Teresa Ramos**
**SCH# 10049 Expires 11-30-18**
**Bexar County, Texas**

**BEFORE ME,** a Notary Public, on this day personally appeared **Teresa Ramos**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON April 3, 2017

**Notary Public, State of Texas**

RICHARD D. RAMOS
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 03-22-2018
ID# 5334195



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Liberty Mutual Insurance Company by delivering
to its registered Agent Corporation Service Co.
211 East 7TH St. #620
Austin, TX 78701

9590 9403 0951 5223 1483 88

2. Article Number (Transfer from service label)
7015 3430 0001 0199 3897

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ Chris Sousan
☐ Agent
☐ Addressee

B. Received by (Printed Name)
C. Date of Delivery
MAR 27 2017

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

7015 3430 0001 0199 3897

For delivery information, visit our website at www.usps.com®.

AUSTIN, TX 78701

OFFICIAL USE

Certified Mail Fee $3.35

$2.75

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $ $0.00
☐ Return Receipt (electronic) $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required $ $0.00
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage $3.50
$

Total Postage and Fees
$ $9.60

03/23/

Sent To Liberty Mutual Insurance Co.
Street and Apt. No., or PO Box No. 211 E. 7TH St. #620
City, State, ZIP+4® Austin, TX 78701

PS Form 3800, April 2015 PSN 7530-02-000-9047      See Reverse for Instructions

### IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS
### 243rd JUDICIAL DISTRICT

MANUEL J. CORRAL

   vs                               Cause No. 2017DCV0689

LIBERTY MUTUAL INSURANCE
COMPANY

### ORDER SETTING HEARING

The above reference case is **SET** as follows:

| Date | Time | Description |
|------|------|-------------|
| 05/25/2017 | 8:30 AM | Status Hearing |

Dear Counsel:

The Court requires that counsel appear in person or that arrangements be made for local counsel to appear.

If the above reference case has already been settled, tried or dismissed, please notify the Court Coordinator (Lynda Smigiel: 915/546-2168) upon receipt of this order.

  **Signed on this the 2nd day of March, 2017.**

**LUIS AGUILAR, Judge**


***IF YOU KNOW OF AN ATTORNEY INVOLVED IN THIS CASE AND NOT LISTED, PLEASE PROVIDE HIM/HER WITH A COPY OF THIS SETTING.***

*Fax:*

 Brent L. Klender                          210-734-9965

## CAUSE NO. 2017DCV0689

| | | |
|---|---|---|
| **MANUEL J. CORRAL AND** | § | **IN THE DISTRICT COURT** |
| **LOERNA CORRAL** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **243rd JUDICIAL DISTRICT** |
| | § | |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY AND** | § | |
| **KEVIN BROWN** | § | **EL PASO COUNTY, TEXAS** |
| **Defendants.** | § | |

## DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant Liberty Mutual Insurance Company ("Liberty") and files Defendant's Original Answer to Plaintiffs' Original Petition and for such would respectfully show the Court the following:

### I.
### GENERAL DENIAL

Pursuant to TEX. R. CIV. P. 92, Defendant denies each and every, all and singular, the allegations set forth in Plaintiffs' Original Petition and demands strict proof thereof by a preponderance of the evidence at the final trial of this case.

### II.
### VERIFIED DENIAL

Pursuant to the provisions of Rule 93 of the Texas Rules of Civil Procedure, Defendant Liberty Mutual Insurance Company denies that it is a proper party to this lawsuit on the grounds that it did not issue the relevant insurance policy to Plaintiff in this case. The insurance policy at issue in this lawsuit was issued by Liberty Insurance Corporation.

## III.
## AFFIRMATIVE DEFENSES

Liberty avers and asserts that Plaintiffs have failed to satisfy all conditions precedent to bringing this suit under their homeowners' insurance policy. Specifically, Liberty reserves its right to invoke the policy's appraisal provision to resolve issues regarding the amount of loss and denies any intent to waive this right.

WHEREFORE, PREMISES CONSIDERED, Defendant Liberty Mutual Insurance Company respectfully prays that upon final hearing hereof, Plaintiffs take nothing by reason of this action, that Defendant be awarded its costs of court, and for such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

**HANNA & PLAUT, L.L.P.**
211 East Seventh Street, Suite 6000
Austin, Texas 78701
Telephone:    (512) 472-7700
Facsimile:    (512) 472-0205

By: _____
Catherine L. Hanna
State Bar No. 08918280
Email:  channa@hannaplaut.com
Laura D. Tubbs
State Bar No. 24052792
Email:  ltubbs@hannaplaut.com

**ATTORNEYS FOR DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered by e-service and/or facsimile on this __14th__ day of __April__, 2017 to:

***Via Facsimile (210) 734-9965***
Brent L. Klender
Christopher Miller
Harold McCall
Don Crook
Wayne Wright, LLP
5707 Interstate 10 West
San Antonio, Texas  78201
*Attorney for Plaintiffs*

Catherine L. Hanna

## **VERIFICATION**

STATE OF TEXAS      §
                              §
COUNTY OF TRAVIS    §

BEFORE ME, the undersigned authority in and for the State of Texas, on this day personally appeared Catherine L. Hanna known to me to be the same person whose name is subscribed hereto, who being first duly sworn in the manner provided by law on oath stated that she is duly qualified to make this affidavit on behalf of Defendant Liberty Mutual Insurance Company in the above-entitled and numbered cause, that she has read Paragraph II of Defendant's Original Answer and the matters stated therein are within her personal knowledge and are true and correct.

_____
Catherine L. Hanna

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this the _____ 14TH _____ day of April, 2017, to certify which witness my hand and official seal of office.

RAYMOND EARL JACKSON
NOTARY PUBLIC
ID# 12652419-0
State of Texas
Comm. Exp. 05-19-2020

_____
Notary Public in and for the State of Texas